

# MIAMI-DADE COUNTY CLERK OF THE COURTS
## LUIS G. MONTALDO, CLERK AD INTERIM

Contact Us     My Account     

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

### SARA VILLAMAR VS LEXINGTON INSURANCE COMPANY

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2022-024040-CA-01 | **Filing Date:** | 12/19/2022 |
| **State Case Number:** | 132022CA024040000001 | **Judicial Section:** | CA09 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Insurance Claim |
| **Case Status:** | OPEN | | |

☰ Related Cases      Total Of Related Cases: 0 ➕

👥 Parties      Total Of Parties: 2 ➕

🔧 Hearing Details      Total Of Hearings: 0 ➕

🔊 Dockets      Total Of Dockets: 10 ➖

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 10 | 12/29/2022 | | Notice of Service of Process | Event | |
| | | 12/27/2022 | | 20 Day Summons Issued | Service | |
| 📄 | 9 | 12/27/2022 | | ESummons 20 Day Issued | Event | **RE: INDEX # 7.**<br>Parties: Lexington Insurance Company |
| | 8 | 12/24/2022 | | Receipt: | Event | **RECEIPT#:3050091 AMT PAID:$10.00 NAME:CARLOS SANTI PROPERTY & CASUALTY LAW GROUP 2307 DOUGLAS RD. SUI MIAMI FL 33145 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$10.00 RECEIPT DATE:12/24/2022 REGISTER#:305 CASHIER:EFILINGUSER** |
| 📄 | 7 | 12/22/2022 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| | 6 | 12/21/2022 | | Receipt: | Event | **RECEIPT#:3060083 AMT PAID:$401.00 NAME:CARLOS SANTI PROPERTY & CASUALTY LAW GROUP 2307 DOUGLAS RD. SUI MIAMI FL 33145 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:12/21/2022 REGISTER#:306 CASHIER:EFILINGUSER** |
| 📄 | 4 | 12/19/2022 | | Request for Production | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 3 | 12/19/2022 | | Notice of Interrogatory | Event | |
| 📄 | 2 | 12/19/2022 | | Complaint | Event | |
| 📄 | 1 | 12/19/2022 | | Civil Cover Sheet - Claim Amount | Event | |

[◀◀ BACK]

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



**Luis G. Montaldo**
**Clerk Ad Interim**

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2023 Clerk of the Courts. All rights reserved.



**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

## I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Sara Villamar</u>
Plaintiff                                           Case # _____

                                                    Judge  _____

vs.

<u>Lexington Insurance Company</u>
Defendant

---

## II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

## III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☒ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  1

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Carlos L Santi             Fla. Bar # 70529
    Attorney or party                 (Bar # if attorney)

Carlos L Santi              12/19/2022
 (type or print name)            Date

Case 1:23-cv-20325-DPG   Document 1-4   Entered on FLSD Docket 01/27/2023   Page 6 of 119

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE, FLORIDA

CASE NO.:

Sara Villamar,

Plaintiff,

v.

Lexington Insurance Company,

Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Sara Villamar, (the "Insured"), hereby sues Defendant, Lexington Insurance Company (the "Insurance Company"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages that is more than $30,000.00 exclusive of interest, costs and attorney's fees.

2. The Insured is an individual who at all times material hereto has resided in Miami-Dade County, Florida.

3. The Insurance Company is qualified to do business in Florida and has, at all times material hereto, been conducting business in Miami-Dade County, Florida.

4. Venue is proper in Miami-Dade County, Florida because the contract, which forms the subject matter of this lawsuit, was executed in Miami-Dade County, Florida.

5. All conditions precedent to the filing of this lawsuit have occurred, have been

waived or have been performed.

## **GENERAL ALLEGATIONS**

6.   At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of 23247975-01 (the "Policy"). The Policy is attached hereto as Exhibit A and incorporated into the Complaint by reference herein.

7.   Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property pursuant to the terms of the policy. The damaged property is located at 3485 North Meridian Ave, Miami Beach, FL 33140 (the "Property").

8.   On or about 04/11/2021, while the Policy was in full force and effect, the Property sustained a covered loss as a result of damage due to Windstorm (the "Loss").

9.   The Insurance Company assigned claim number 683-677980 to the Loss.

10.   Subsequently, the Insurance Company informed the Insured that although coverage existed, the costs to repair the damaged property did not exceed $12,858.50. See Exhibit B. After diligent inspection of the Loss, it was obvious that the Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy but which the Insurance Company failed to indemnify for.

11.   As a result of the foregoing, the Insurance Company has breached the Policy.

12.   The Insured has suffered and continues to suffer damages resulting from Insurance

2

Company's breach of the Policy.

13. The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

**COUNT I**
**BREACH OF CONTRACT**

The Insured reincorporates paragraphs 1 through 13 as if fully set forth herein.

14. It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

15. The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing her obligations under the Policy.

16. The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

17. Furthermore, at all times material hereto, the Insured has satisfied all post-loss obligations to the best of her ability in accordance with the Policy.

18. In contrast, the Insurance Company has failed to: (i) acknowledge coverage for a portion of the Loss; and/or (ii) pay Insured a sufficient amount for the loss. As a result of the foregoing, the Insurance Company has breached the Policy.

19. As a direct and proximate result of the Insurance Company's breach of the policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court, enter judgment against the Insurance Company for damages, plus pre-judgment interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## JURY TRIAL DEMAND

The Insured hereby demands a trial by jury on all issues so triable.

Dated December 19, 2022

Respectfully submitted,

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

4

Insured's Name  Villamar, Sara

Policy # 2324797501

UMR # _____
(Lloyd's Policies Only)

Policy Dates  From  08/14/2020        To  08/14/2021

Surplus Lines Agents Name          Timothy Ramsey

Surplus Lines Agents Address       11405 North Community House Road, Suite 100 Charlotte NC 28277

Surplus Lines Agents License #     P143369

Producing Agent's Name             ADVANCED E & S OF FLORIDA - Harvey Sheldon

Producing Agent's Physical Address 3250 NORTH 29TH AVENUE , HOLLYWOOD,  FL  33030

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

**"SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."**

| | | | |
|---|---|---|---|
| Policy Premium | $10,941.00 | Policy Fee | $75.00 |
| Inspection Fee | $0.00 | Provider Fee | $0.00 |
| Tax | $544.19 | Service Fee | $6.61 |
| FHCF Assessment | $0.00 | Citizen's Assessment | $0.00 |
| EMPA Surcharge | $2.00 | | |

Surplus Lines Agent's
Countersignature

**"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

**"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

EXHIBIT A

**LEXINGTON INSURANCE COMPANY**
**99 High Street**
**Boston, MA 02110-2103**
**HO3 Declaration Confirmation**

**Policy Number:  23247975 - 01**                           **Effective:   08/14/2020**
**Name of Insured and Risk Address:**                        **Expiration: 08/14/2021**
**Villamar, Sara**

**3485 N MERIDIAN AVE**
**MIAMI BEACH, FL 33140**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED
BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE
GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN
INSOLVENT UNLICENSED INSURER.**

**Producing Agent:  ADVANCED E & S OF FLORIDA**

**Address: 3250 NORTH 29TH AVENUE**
**Homestead, FL 33030**

**SURPLUS LINES INSURERS′ POLICY RATES AND FORMS ARE NOT APPROVED
BY ANY FLORIDA REGULATORY AGENCY.**

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE
OR WIND LOSSES, WHICH MAY RESULT IN HIGH
OUT-OF-POCKET EXPENSES TO YOU.**

**THIS POLICY CONTAINS AS CO-PAY PROVISION THAT MAY RESULT IN HIGH
OUT-OF-POCKET EXPENSES TO YOU.**

EXHIBIT A



**LEXINGTON INSURANCE COMPANY**
**HO3 Homeowner Declaration Page**

Sub-Broker

| | |
|---|---|
| **Policy Number:** 23247975 - 01 | **Renewal of Policy Number:** 23247975 |

| **Name of Insured and Mailing Address:** | **Broker Name and Address:** |
|---|---|
| Villamar, Sara | Hull & Company, Inc. - Charlotte |
| | 11405 North Community House Rd. |
| 3485 N MERIDIAN AVE | Charlotte, NC 28277 |
| MIAMI BEACH, FL 33140 | 800-241-4855 |

**Policy Term:** 08/14/2020    **Expiration:** 08/14/2021    12:01 AM Standard Time at the Insured's residence premises.

**The residence premises covered by this policy is located at the above address, unless otherwise stated.**

Insurance is provided only with respect to those special limits of liability applicable thereto:

**Coverage Part 1 - Homeowners**
- Coverage A:  Dwelling                     $537,550
- Coverage B:  Other Structures          $10,000
- Coverage C:  Contents                     $20,000
- Coverage D:  Loss of Use                 $20,000
- Loss Assessment:                           $1,000
- Ordinance or Law:                          10%
- Coverage E:  Personal Liability       $300,000
- Coverage F: Medical Payments to Others    $3,000

**Coverage Part 2 – Personal Umbrella**
- Umbrella Limit                              $0
- Self Insured Retention                   $0

**Coverage Part 3 – Excess Flood**
- Building                                        $0
- Contents                                       $0

**Coverage Part 4 – Scheduled Property**
- Total Scheduled Property              $0

| | |
|---|---|
| **Annual Premium:** | $10,941.00 |

| **Homeowner Deductibles** | | | |
|---|---|---|---|
| | | **Policy Premium:** | $10,941.00 |
| **All Other Perils:** | $2,500 | **Inspection Fee:** | $0.00 |
| **Named Storm:** | 5% | **SL Broker Fee:** | $75.00 |
| **Earthquake:** | Excluded | **Surplus Lines Taxes:** | $544.19 |
| | | **Stamping Fee:** | $6.61 |
| **Special:** None | $N/A | | |
| **Special:** None | $N/A | | |
| | | **Emergency Fund Fee:** | $2.00 |
| | | **Total Due:** | $11,568.80 |

| **Minimum Earned Premium:**  $0 | **Sub Broker Information** | |
|---|---|---|
| **Homeowners Rating Information** | **Name:** | ADVANCED E & S OF FLORIDA |
| Territory: 30   Protection Class: 1 | **Addr 1:** | 3250 NORTH 29TH AVENUE |
| County: MIAMI-DADE-FL   EQ Zone: NA | **Addr 2:** | |
| Construction:Masonry   Yr Built: 1951 | **City, State, Zip:** | HOLLYWOOD          , FL 33030 |

**Forms and Endorsements made part of this policy at time of issuance:**

This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy.

Countersignature Date: 08/04/2020                Countersignature:

*LexElite 11/00*                          Authorized Representative:  *Joseph Mack*

**EXHIBIT A**

**Policy Number:** 23247975 - 01
**Insured:** Villamar, Sara

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed
by its President, Secretary and a duly authorized representative of the Insurance Company.

_____
**PRESIDENT**

_____
**SECRETARY**

| Mortgage 1 | Mortgage 2 |
|---|---|
| FINANCE OF AMERICA REVERSE LLC ISAOA<br>P.O. BOX 39457<br>SOLON, OH 44139<br>Loan #: 3768800 | |
| **Mortgage 3** | |
| | |

**Page 2 of 2**

EXHIBIT A

POLICY NUMBER:   23247975 - 01
Effective Date:        08/14/2020                                          Date Issued: 08/04/2020

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page & Authorization Clause |
| FL ORD ED 04 96 | H03 Florida Disclosure Notice (FL only) |
| FL REJ ED 04 96 | H03 Florida Rejection - Ordinance and Law (FL ONLY) |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 21 05 02 | Windstorm Protective Devices |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 05 80 06 18 | Property Remediation for Escaped Liquid Fuel |
| HO 23 70 07 01 | Windstorm Exterior Paint or Waterproofing Exclusion |
| LEX 00 14 09 08 | Important Flood Notice. |
| LEX 00 31 11 04 | Trampoline Exclusion |
| LEX 00 32 08 04 | Underground Storage Tank Exclusion |
| LEX 00 64 06 18 | Florida Named Storm Deductible |
| LEX 00 82 06 18 | Maximum Amount Payable if Other Insurance |
| LEX 00 106 06 18 | Special Provisions Florida With Sinkhole Collapse |
| LEX 00 144 04 14 | Farm Operations Exclusion |
| LEX 00 156 06 18 | Specified Amount of Addtional Insurance For Coverage A ERC |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard |
| LEX 00 177 06 18 | Incidental Business Coverage Endorsement |
| LEX 00 195 04 14 | Section I & Section II Total Business Exclusion |
| LEX 00 202 06 18 | Existing Damage Exclusion |
| LEX 00 207 05 16 | Care Services Exclusion |
| LEX 00 208 06 18 | Drone Exclusion |
| LEX 00 217 05 18 | Loss Assessment Coverage |
| LEX 00 235 08 18 | Water Back Up and Sump Overflow |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| 89644 (6/13) | Economic Sanctions Endorsement |
| PRG 2023 (5-14) | Service of Suit Condition |
| Claims Notice to Policyholders | What to Do if You Suffer a Loss to Your Home and Property |
| Privacy Notice | Combined Privacy Notice (Non WC) Live Travel Pet and DM 08 2017 |

EXHIBIT A

**LEXINGTON INSURANCE COMPANY**
**99 High Street**
**Boston, MA 02110-2103**
**HO3 Declaration Confirmation**

**Policy Number:  23247975 - 01**                              **Effective:   08/14/2020**
**Name of Insured and Risk Address:**                          **Expiration: 08/14/2021**
**Villamar, Sara**

**3485 N MERIDIAN AVE**
**MIAMI BEACH, FL 33140**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**Producing Agent:  ADVANCED E & S OF FLORIDA**

**Address: 3250 NORTH 29TH AVENUE**
**Homestead, FL 33030**

**SURPLUS LINES INSURERS′ POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**THIS POLICY CONTAINS AS CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

EXHIBIT A


Mortgagee

## LEXINGTON INSURANCE COMPANY
### HO3 Homeowner Declaration Page

| Policy Number: 23247975 - 01 | Renewal of Policy Number: 23247975 |
|---|---|

**Name of Insured and Mailing Address:**
Villamar, Sara

3485 N MERIDIAN AVE
MIAMI BEACH, FL 33140

**Broker Name and Address:**
Hull & Company, Inc. - Charlotte
11405 North Community House Rd.
Charlotte, NC 28277
800-241-4855

| Policy Term: 08/14/2020 | Expiration: 08/14/2021 | 12:01 AM Standard Time at the Insured's residence premises. |
|---|---|---|

**The residence premises covered by this policy is located at the above address, unless otherwise stated.**

Insurance is provided only with respect to those special limits of liability applicable thereto:

**Coverage Part 1 - Homeowners**
- Coverage A: Dwelling — $537,550
- Coverage B: Other Structures — $10,000
- Coverage C: Contents — $20,000
- Coverage D: Loss of Use — $20,000
- Loss Assessment: — $1,000
- Ordinance or Law: — 10%
- Coverage E: Personal Liability — $300,000
- Coverage F: Medical Payments to Others — $3,000

**Coverage Part 2 – Personal Umbrella**
- Umbrella Limit — $0
- Self Insured Retention — $0

**Coverage Part 3 – Excess Flood**
- Building — $0
- Contents — $0

**Coverage Part 4 – Scheduled Property**
- Total Scheduled Property — $0

| | |
|---|---|
| **Annual Premium:** | $10,941.00 |

**Homeowner Deductibles**

| | | | |
|---|---|---|---|
| All Other Perils: | $2,500 | **Policy Premium:** | $10,941.00 |
| Named Storm: | 5% | **Inspection Fee:** | $0.00 |
| Earthquake: | Excluded | **SL Broker Fee:** | $75.00 |
| | | **Surplus Lines Taxes:** | $544.19 |
| Special: None | $N/A | **Stamping Fee:** | $6.61 |
| Special: None | $N/A | | |
| | | **Emergency Fund Fee:** | $2.00 |
| | | **Total Due:** | $11,568.80 |

| Minimum Earned Premium: $0 | Sub Broker Information | |
|---|---|---|

| **Homeowners Rating Information** | | **Name:** | ADVANCED E & S OF FLORIDA |
|---|---|---|---|
| Territory: 30 | Protection Class: 1 | **Addr 1:** | 3250 NORTH 29TH AVENUE |
| County: MIAMI-DADE-FL | EQ Zone: NA | **Addr 2:** | |
| Construction: Masonry | Yr Built: 1951 | **City, State, Zip:** | HOLLYWOOD , FL 33030 |

**Forms and Endorsements made part of this policy at time of issuance:**

This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy.

Countersignature Date: 08/04/2020

Countersignature:

**LexElite 11/00**

Authorized Representative: *Joseph Wade*

EXHIBIT A

**Policy Number:** 23247975 - 01
**Insured:** Villamar, Sara

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed by its President, Secretary and a duly authorized representative of the Insurance Company.

_____
**PRESIDENT**

_____
**SECRETARY**

| Mortgage 1 | Mortgage 2 |
|---|---|
| FINANCE OF AMERICA REVERSE LLC ISAOA<br>P.O. BOX 39457<br>SOLON, OH 44139<br>Loan #: 3768800 | |
| **Mortgage 3** | |
| | |

**Page 2 of 2**

EXHIBIT A

POLICY NUMBER:  23247975 - 01
Effective Date:        08/14/2020                                      Date Issued: 08/04/2020

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page & Authorization Clause |
| FL ORD ED 04 96 | H03 Florida Disclosure Notice (FL only) |
| FL REJ ED 04 96 | H03 Florida Rejection - Ordinance and Law (FL ONLY) |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 21 05 02 | Windstorm Protective Devices |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 05 80 06 18 | Property Remediation for Escaped Liquid Fuel |
| HO 23 70 07 01 | Windstorm Exterior Paint or Waterproofing Exclusion |
| LEX 00 14 09 08 | Important Flood Notice. |
| LEX 00 31 11 04 | Trampoline Exclusion |
| LEX 00 32 08 04 | Underground Storage Tank Exclusion |
| LEX 00 64 06 18 | Florida Named Storm Deductible |
| LEX 00 82 06 18 | Maximum Amount Payable if Other Insurance |
| LEX 00 106 06 18 | Special Provisions Florida With Sinkhole Collapse |
| LEX 00 144 04 14 | Farm Operations Exclusion |
| LEX 00 156 06 18 | Specified Amount of Addtional Insurance For Coverage A ERC |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard |
| LEX 00 177 06 18 | Incidental Business Coverage Endorsement |
| LEX 00 195 04 14 | Section I & Section II Total Business Exclusion |
| LEX 00 202 06 18 | Existing Damage Exclusion |
| LEX 00 207 05 16 | Care Services Exclusion |
| LEX 00 208 06 18 | Drone Exclusion |
| LEX 00 217 05 18 | Loss Assessment Coverage |
| LEX 00 235 08 18 | Water Back Up and Sump Overflow |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| 89644 (6/13) | Economic Sanctions Endorsement |
| PRG 2023 (5-14) | Service of Suit Condition |
| Claims Notice to Policyholders | What to Do if You Suffer a Loss to Your Home and Property |
| Privacy Notice | Combined Privacy Notice (Non WC) Live Travel Pet and DM 08 2017 |

EXHIBIT A

**LEXINGTON INSURANCE COMPANY**
**99 High Street**
**Boston, MA 02110-2103**
**HO3 Declaration Confirmation**

**Policy Number:  23247975 - 01**                    **Effective:   08/14/2020**
**Name of Insured and Risk Address:**                **Expiration: 08/14/2021**
**Villamar, Sara**

**3485 N MERIDIAN AVE**
**MIAMI BEACH, FL 33140**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**Producing Agent:  ADVANCED E & S OF FLORIDA**

**Address: 3250 NORTH 29TH AVENUE**
**Homestead, FL 33030**

**SURPLUS LINES INSURERS′ POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**THIS POLICY CONTAINS AS CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

EXHIBIT A



**LEXINGTON INSURANCE COMPANY**
*HO3 Homeowner Declaration Page*

Insured

| Policy Number: 23247975 - 01 | Renewal of Policy Number: 23247975 |
|---|---|

| **Name of Insured and Mailing Address:** | **Broker Name and Address**: |
|---|---|
| Villamar, Sara<br><br>3485 N MERIDIAN AVE<br>MIAMI BEACH, FL 33140 | Hull & Company, Inc. - Charlotte<br>11405 North Community House Rd.<br>Charlotte, NC 28277<br>800-241-4855 |

| Policy Term: 08/14/2020 | Expiration: 08/14/2021 | 12:01 AM Standard Time at the Insured's residence premises. |
|---|---|---|

**The residence premises covered by this policy is located at the above address, unless otherwise stated.**

Insurance is provided only with respect to those special limits of liability applicable thereto:

**Coverage Part 1 - Homeowners**
- Coverage A:  Dwelling — $537,550
- Coverage B:  Other Structures — $10,000
- Coverage C:  Contents — $20,000
- Coverage D:  Loss of Use — $20,000
- Loss Assessment: — $1,000
- Ordinance or Law: — 10%
- Coverage E:  Personal Liability — $300,000
- Coverage F: Medical Payments to Others — $3,000

**Coverage Part 2 – Personal Umbrella**
- Umbrella Limit — $0
- Self Insured Retention — $0

**Coverage Part 3 – Excess Flood**
- Building — $0
- Contents — $0

**Coverage Part 4 – Scheduled Property**
- Total Scheduled Property — $0

| | |
|---|---|
| **Annual Premium:** | $10,941.00 |

| **Homeowner Deductibles** | | | |
|---|---|---|---|
| All Other Perils: | $2,500 | **Policy Premium:** | $10,941.00 |
| Named Storm: | 5% | **Inspection Fee:** | $0.00 |
| Earthquake: | Excluded | **SL Broker Fee:** | $75.00 |
| | | **Surplus Lines Taxes:** | $544.19 |
| Special: None | $N/A | **Stamping Fee:** | $6.61 |
| Special: None | $N/A | | |
| | | **Emergency Fund Fee:** | $2.00 |
| | | **Total Due:** | $11,568.80 |

| Minimum Earned Premium:  $0 | **Sub Broker Information** | |
|---|---|---|
| **Homeowners Rating Information** | Name: | ADVANCED E & S OF FLORIDA |
| Territory: 30          Protection Class: 1 | Addr 1: | 3250 NORTH 29TH AVENUE |
| County: MIAMI-DADE-FL          EQ Zone: NA | Addr 2: | |
| Construction:Masonry          Yr Built: 1951 | City, State, Zip: | HOLLYWOOD                    , FL 33030 |

**Forms and Endorsements made part of this policy at time of issuance:**

This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy.

Countersignature Date: 08/04/2020          Countersignature:

*LexElite 11/00*          Authorized Representative:

EXHIBIT A

**Policy Number:** 23247975 - 01
**Insured:** Villamar, Sara

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed
by its President, Secretary and a duly authorized representative of the Insurance Company.

_____
**PRESIDENT**

_____
**SECRETARY**

| Mortgage 1 | Mortgage 2 |
|---|---|
| FINANCE OF AMERICA REVERSE LLC ISAOA<br>P.O. BOX 39457<br>SOLON, OH 44139<br>Loan #: 3768800 | |
| **Mortgage 3** | |
| | |

**Page 2 of 2**

EXHIBIT A

POLICY NUMBER:  23247975 - 01
Effective Date:          08/14/2020                                    Date Issued: 08/04/2020

### SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page & Authorization Clause |
| FL ORD ED 04 96 | H03 Florida Disclosure Notice (FL only) |
| FL REJ ED 04 96 | H03 Florida Rejection - Ordinance and Law (FL ONLY) |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 21 05 02 | Windstorm Protective Devices |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 05 80 06 18 | Property Remediation for Escaped Liquid Fuel |
| HO 23 70 07 01 | Windstorm Exterior Paint or Waterproofing Exclusion |
| LEX 00 14 09 08 | Important Flood Notice. |
| LEX 00 31 11 04 | Trampoline Exclusion |
| LEX 00 32 08 04 | Underground Storage Tank Exclusion |
| LEX 00 64 06 18 | Florida Named Storm Deductible |
| LEX 00 82 06 18 | Maximum Amount Payable if Other Insurance |
| LEX 00 106 06 18 | Special Provisions Florida With Sinkhole Collapse |
| LEX 00 144 04 14 | Farm Operations Exclusion |
| LEX 00 156 06 18 | Specified Amount of Addtional Insurance For Coverage A ERC |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard |
| LEX 00 177 06 18 | Incidental Business Coverage Endorsement |
| LEX 00 195 04 14 | Section I & Section II Total Business Exclusion |
| LEX 00 202 06 18 | Existing Damage Exclusion |
| LEX 00 207 05 16 | Care Services Exclusion |
| LEX 00 208 06 18 | Drone Exclusion |
| LEX 00 217 05 18 | Loss Assessment Coverage |
| LEX 00 235 08 18 | Water Back Up and Sump Overflow |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| 89644 (6/13) | Economic Sanctions Endorsement |
| PRG 2023 (5-14) | Service of Suit Condition |
| Claims Notice to Policyholders | What to Do if You Suffer a Loss to Your Home and Property |
| Privacy Notice | Combined Privacy Notice (Non WC) Live Travel Pet and DM 08 2017 |

EXHIBIT A

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)

EXHIBIT A

# LEXINGTON INSURANCE COMPANY

FLORIDA DISCLOSURE NOTICE - HOMEOWNERS INSURANCE
REPLACEMENT  COST COVERAGE AND ORDINANCE OR LAW COVERAGE
(NOT APPLICABLE TO FORMS HO 00 04 AND HO 00 06)

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE NOTICE NOR DOES
THIS NOTICE REPLACE ANY PROVISION OF YOUR POLICY.  YOU SHOULD
READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR
COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.  IF
THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE THE
PROVISIONS OF THE POLICY SHALL PREVAIL.

FLORIDA Insurance law requires that insureds who buys a Homeowners
Insurance policy, which is not written on a Form HO 00 04 or HO 00 06, must be
offered the opportunity to buy Replacement Cost coverage for their home and
other building structures.

FLORIDA Insurance law further requires that if the Homeowners Insurance
policy automatically provides, or if the insured accepts the offer to buy,
Replacement Cost coverage, Ordinance or Law coverage must also be offered
for the dwelling and other building  and non - building structures for a minimum
additional amount of 25% of the limit applying to the dwelling or condominium -
unit.

## ABOUT REPLACEMENT COST COVERAGE

If Replacement Cost coverage is included or added to the Homeowners policy,
loss settlement will be based on the cost to repair or replace the house,
condominium - unit or other building structure damaged or destroyed by a
covered peril with like construction, subject, of course, to policy limits.  No
deduction for depreciation will be applied.

To qualify for this favorable method of loss settlement, certain conditions must
be met.  These are explained in the policy under the Loss Settlement condition;
or if you have Form HO  00 08, the optional Replacement Cost coverage
endorsement.

Note that loss settlement for non - building structures will  be based on the
actual cash value of the damaged or destroyed structure, not the Replacement
Cost.

## ABOUT ORDINANCE OR LAW ( BUILDING CODE UPGRADE COVERAGE )

If Ordinance or Law coverage is included or added to the Homeowners policy,
loss payment will also include the increased costs you incur to repair the
damaged structure, or to construct a replacement structure, in order to comply
with the enforcement of any local, state or federal law, ordinance or regulation



## LEXINGTON INSURANCE COMPANY

affecting repair or construction of such structures.  Loss payment will be subject to either the Replacement Cost or Actual Cash Value loss settlement, whichever apply.

Ordinance or Law coverage does not provide payment for any loss in value to covered property because of building or land use codes;  **NOR** does it cover the costs incurred to clean up or respond to a pollutant on covered  property UNLESS the pollutant is a direct result of damage to covered property by a specified covered peril.

Refer to the Ordinance or Law provisions in the policy for complete details.

The following briefly outlines which of these coverages, and to what extent they are:

1.      automatically included in the Homeowners policy you requested or are renewing; or

2.      available for an additional premium charge.

**Replacement Cost** - Your Homeowners policy automatically provides coverage for the cost to repair or replace a  dwelling or other building structure if, at the time of loss, you meet the requirements stipulated in the Loss Settlement Condition found in the policy.

If you do not meet these requirements, you may NOT be eligible for full repair or replacement cost protection.  If, after reading your policy, you determine that you might need higher limits or additional coverage, contact your insurance representative to discuss availability and your eligibility.

**Ordinance or Law** - Your Homeowners policy automatically provides coverage for building code upgrade for an amount equal to 10% of the coverage A limit. You may, however, buy up to a maximum of  25% of the coverage A limit.  If you want  a greater amount of coverage, contact your insurance representative.

If you do NOT want this additional coverage, please read, sign and date the enclosed REJECTION FORM  and return it to your insurance representative.  If you don't return the completed Form to us within **10 days**, we will endorse the coverage on to your policy and charge you the additional premium.

If you decide to reject this coverage now, you can request it at anytime this policy, or a renewal policy, is in force.  If you do, coverage  will not become effective during a storm or hurricane or during the time a storm or hurricane watch or warning is issued by the National Weather Service and for 72 hours after that watch or warning is canceled.



**LEXINGTON INSURANCE COMPANY**

ORDINANCE OR LAW – REJECTION OF INCREASED AMOUNT OF
COVERAGE

I have read the Disclosure Notice about the above noted coverage and have decided that  I DO NOT WANT THE COVERAGE THAT YOU OFFERED ME.

I understand that by rejecting this offer, it need not be repeated for three years from the date of my rejection.

I also understand that I can request this coverage at any time this policy, or a renewal policy, is in force and, if I do, coverage will not become effective:

1.  When a storm or hurricane watch or warning is issued for the state of Florida by the National Weather Service;

2.  During a storm or hurricane; and

3.  For 72 hours after the storm or hurricane watch or warning is cancelled by the National Weather Service.

Named Insured(s) Sign Below:

Date Signed:

FL –REJ – ed. 04/96

EXHIBIT A

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or


EXHIBIT A

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

   Copyright, Insurance Services Office, Inc., 1999   EXHIBIT "A"   HO 00 03 10 00



**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   **a.** Land, including land on which the other structures are located;

   **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   **c.** Other structures from which any "business" is conducted; or

   **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   **b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.


EXHIBIT A

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

**j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

**k.** $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

**(1)** This includes:

**(a)** Their accessories, equipment and parts; or

**(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

**(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service an "insured's" residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00



EXHIBIT "A"

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

### D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

#### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

#### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

#### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

#### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### E. Additional Coverages

#### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

**(3)** Damage(s) a covered structure; or

**(4)** Does not damage a covered structure, but:

**(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

#### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.


EXHIBIT A

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.


EXHIBIT A

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C**;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.


EXHIBIT A

**b.** This coverage does not include loss:

   **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

   **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

   **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

**2.** We do not insure, however, for loss:

  **a.** Excluded under Section **I** – Exclusions;

  **b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

  **c.** Caused by:

   **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

    **(a)** Maintain heat in the building; or


EXHIBIT "A"

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   **(a)** Fence, pavement, patio or swimming pool;

   **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

   **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

   **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

   **(a)** Wear and tear, marring, deterioration;

   **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

   **(c)** Smog, rust or other corrosion, or dry rot;

   **(d)** Smoke from agricultural smudging or industrial operations;

   **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

   **(g)** Birds, vermin, rodents, or insects; or

   **(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or


EXHIBIT A

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

EXHIBIT "A"



12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

   (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section **I** – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;


EXHIBIT A

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

  Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00


EXHIBIT "A"

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

d. Changes in title or occupancy of the property during the term of the policy;

e. Specifications of damaged buildings and detailed repair estimates;

f. The inventory of damaged personal property described in **6.** above;

g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.


EXHIBIT "A"

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.


EXHIBIT A

### H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

### J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### K. Mortgage Clause

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

  **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

  **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

  **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### M. Nuclear Hazard Clause

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

### P. Policy Period

This policy applies only to loss which occurs during the policy period.

### Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;


EXHIBIT A

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00


EXHIBIT "A"

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B.** **"Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C.** **"Aircraft Liability"**

This policy does not cover "aircraft liability".

**D.** **"Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E.** **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2.** **"Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";


EXHIBIT A

    **(a)** On an occasional basis if used only as a residence;

    **(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    **(c)** In part, as an office, school, studio or private garage; and

  **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

  **a.** Owned by an "insured";

  **b.** Rented to an "insured"; or

  **c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

  **a.** Undeclared war, civil war, insurrection, rebellion or revolution;

  **b.** Warlike act by a military force or military personnel; or

  **c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

  **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

  **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

    **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(2)** Where the liability of others is assumed by you prior to an "occurrence";

  unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

  **a.** Workers' compensation law;


EXHIBIT "A"

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**a.** Is also an insured under a nuclear energy liability policy issued by the:

**(1)** Nuclear Energy Liability Insurance Association;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

**a.** To repay; or

**b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

### G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

**a.** Occurs off the "insured location"; and

**b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

**a.** Workers' compensation law;

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**3.** From any:

**a.** Nuclear reaction;

**b.** Nuclear radiation; or

**c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

**d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

### SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I;**

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".


EXHIBIT "A"

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

### D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";


EXHIBIT A

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II**.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.


EXHIBIT A

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

**a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.


EXHIBIT A

HOMEOWNERS
HO 04 21 05 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM PROTECTIVE DEVICES

**A.** We acknowledge the installation of storm shutters or other windstorm protective devices, reported by you to us, that protect all exterior wall and roof openings, including doors, windows, skylights and vents, other than soffit and roof ridge vents, that are part of:

**1.** All buildings owned by you and located on, or at the location of, the "residence premises"; or

**2.** A covered condominium or cooperative unit; or

**3.** A one family dwelling or an apartment unit in a two or more family building in which you reside as a tenant and which contains covered personal property; or

**4.** A building(s) insured under this policy as a specific structure located away from the "residence premises" and shown in the endorsement titled Specific Structures Away from the Residence Premises, but only when all buildings owned by you at such location are fully protected with storm shutters or other windstorm protective devices; and

**B.** You agree to:

**1.** Maintain each storm shutter or other windstorm protective device in working order;

**2.** Close and secure all storm shutters or other windstorm protective devices when necessary or arrange for others to do so in your absence; and

**3.** Let us know promptly of:

**a.** The alteration, disablement, replacement, or removal of, or significant damage to, any storm shutter or other windstorm protective device; or

**b.** Any alterations or additions to existing buildings owned by you or the construction of any new buildings owned by you;

**(1)** On, or at the location of, the "residence premises"; or

**(2)** At a location that contains a covered building.

While your failure to comply with any of the conditions in **B.** above will not result in denial of a claim for loss caused by the peril of Windstorm or Hail, we reserve the right to discontinue the benefits of this endorsement, including any related premium credit, in the event of such a failure.

All other provisions of the policy apply.

   © ISO Properties, Inc.,  2001



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   **a.** Coverage **C;** and

   **b.** If covered in this policy:

      **(1)** Awnings, outdoor antennas and outdoor equipment; and

      **(2)** Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   **a.** Jewelry;

   **b.** Furs and garments:

      **(1)** Trimmed with fur; or

      **(2)** Consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      **(1)** Pens or pencils;

      **(2)** Flasks;

      **(2)** Smoking implements; or

      **(3)** Jewelry; and

   **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   **a.** Replacement cost at the time of loss without deduction for depreciation;

   **b.** The full cost of repair at the time of loss;

   **c.** The limit of liability that applies to Coverage **C,** if applicable;

   **d.** Any applicable special limits of liability stated in this policy; or

   **e.** For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.


EXHIBIT "A"

POLICY NUMBER: 23247975 - 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL AND LIMITED LEAD AND ESCAPED LIQUID FUEL LIABILITY COVERAGES

### ALL FORMS EXCEPT FORMS HO 00 04 AND HO 00 06

**SCHEDULE\***

| | | |
|---|---|---|
| The coverage provided by this endorsement and the applicable Limits of Liability shown in this Schedule apply. These limits of liability apply to the total of all loss or expense, including loss assessments, payable under this endorsement, regardless of the number of locations insured under this endorsement and listed in this Schedule or the number of assessments charged against the "insured" during the policy period. | | |
| 1. | Aggregate Limited Lead And Escaped Liquid Fuel Liability Limit Of Liability | $50,000 |
| 2. | Property Remediation For Escaped Liquid Fuel Limit Of Liability | $10,000 |
| | This Property Remediation For Escaped Liquid Fuel Limit Of Liability applies to the "residence premises" as defined in Paragraphs **a.**, **b.** or **c.** of Definition **11.** "Residence premises" in this endorsement and any of the following locations as defined in Paragraph **d.** of Definition **11.** "Residence premises": | |
| \* Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

## A. Definitions

The definitions applying to the policy form, other than Definition **11.** "Residence premises", apply to this endorsement. Definition **11.** "Residence premises" is deleted and replaced by the following. Definitions **12.** through **14.** are added only with respect to the coverage provided by this endorsement.

**11.** "Residence premises" means:

    **a.** The one family dwelling where you reside;

    **b.** The two, three or four family dwelling where you reside in at least one of the family units or;

    **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations; and

    **d.** Any location shown in the Schedule of this endorsement.

"Residence premises" also includes other structures and grounds at the locations described in **a.** through **d.** above.

**12.** "Covered real property". The following applies only to the Section **I** – Property Coverages – Property Remediation For Escaped Liquid Fuel:

    **a.** "Covered real property" means:

      **(1)** Property owned by an "insured" and covered under Coverage **A** of this policy;

Includes copyrighted material of Insurance Services Office, Inc.


EXHIBIT A

**(2)** Any other one, two, three or four family dwelling building owned by an "insured" and shown in the Schedule under Paragraph **2.;**

**(3)** Materials and supplies located on or next to the "residence premises", used to construct, alter or repair the dwelling or other structures on the "residence premises";

**(4)** Property owned by an "insured" and covered under Coverage **B** of this policy, provided such property is located on the "residence premises"; and

**(5)** Land, other than farm land:

    **(a)** Which is within the "residence premises";

    **(b)** Which is owned by an "insured"; and

    **(c)** On which a building or structures described in **12.a.(1)** through **(4)** is located.

**b.** "Covered real property" does not include:

**(1)** Water;

**(2)** Other structures that are part of the "fuel system"; or

**(3)** Trees, shrubs, plants or lawns, except to the extent provided in **B.3.c.** of this endorsement.

**13.** "Covered personal property". The following applies only to the Section I – Property Coverages – Property Remediation For Escaped Liquid Fuel:

**a.** "Covered personal property" means personal property:

**(1)** Owned or used by an "insured" and covered under Coverage **C** of this policy; and

**(2)** Located on the "residence premises".

**b.** Loss to such property shall be subject to those Coverage **C** Special Limits of Liability that apply.

**14.** "Fuel System" means:

**a.** One or more containers, tanks or vessels which have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel; and:

**(1)** Are, or were, used to hold liquid fuel that is intended to be used solely for one or more of the following:

    **(a)** To heat or cool a building;

    **(b)** To heat water;

    **(c)** To cook food; or

    **(d)** To power "motor vehicles" or watercraft owned by an "insured" and not used primarily for "business"; and

**(2)** Are, or were, located on:

    **(a)** "Covered real property"; or

    **(b)** An "insured location";

**b.** Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in **14.a.;**

**c.** Filler pipes and flues connected to one or more containers, tanks or vessels described in **14.a.;**

**d.** A boiler, furnace or a water heater, the liquid fuel for which is stored in a container, tank or vessel described in **14.a.,** and which is located on:

**(1)** "Covered real property"; or

**(2)** An "insured location";

**e.** Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in **14.a.;** or

**f.** A structure that is specifically designed and built to hold the liquid fuel that escapes from one or more containers, tanks or vessels described in **14.a.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft listed in **a.(1)(d)** above.

**B. Section I – Property Coverages**

The following coverage is added:

**PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL**

**1.** With respect to the total of all escapes of liquid fuel from a "fuel system" which an "insured" first discovers or learns of during the policy period, we will pay up to the limit of liability shown in the Schedule for loss or expense described in **3.** below.

**2.** The limit shown in the Schedule for this coverage is the most we will pay for the total of all loss or expense payable under **3.** below regardless of the:

**a.** Number of locations insured under this endorsement;

**b.** Number of escapes of liquid fuel from a "fuel system" an "insured" first discovers or learns of during the policy period; or

**c.** Number of claims made.

Includes copyrighted material of Insurance Services Office, Inc.

EXHIBIT A

**3. Loss Or Expense Covered**

This coverage pays for:

**a.** Loss to:

**(1)** "Covered real property"; or

**(2)** "Covered personal property";

caused directly or indirectly by the escape of such fuel from a "fuel system";

**b.** The expense you incur to:

**(1)** Take temporary measures to stop the further escape of liquid fuel from any part of the "fuel system";

**(2)** Retard or stop the spread of escaped liquid fuel;

**(3)** Clean up, remove or treat loss to:

**(a)** "Covered real property"; or

**(b)** "Covered personal property"; or

**(4)** Test, monitor or assess the effects of the escape of liquid fuel in, on or away from "covered real property":

**(a)** As required by law; or

**(b)** In response to a request, demand or order by a governmental authority or court of law.

We will pay for such expense only if it results from the same escape that is payable under **a.** or **b.(1), (2)** and **(3)** above;

**c.** Loss to trees, shrubs, plants or lawns, located on the "residence premises", but only if there is loss or expense caused by the same escape that is payable under **a.** or **b.** above. However, we will not pay more than an amount equal to 5% of the limit of liability shown in the Schedule for the total of all loss to trees, shrubs, plants or lawns. No more than $500 of this amount will be payable for any lawn or any one tree, shrub, or plant. We do not cover property grown for "business".

Under Form **HO 00 08,** no more than $250 of the amount of insurance available under this coverage will be payable for lawns or any one tree, shrub or plant; and

**d. Additional Living Expense**

**(1)** Additional Living Expense means any necessary increase in living expenses you incur, so that your household can maintain its normal standard of living, if the escape of liquid fuel:

**(a)** Results in loss or expense payable under **a.** or **b.** above; and

**(b)** Makes that part of the "residence premises" where you reside not fit to live in.

**(2)** Payment for Additional Living Expense will be for the shortest time required:

**(a)** To make that part of the "residence premises" where you reside fit to live in; or

**(b)** For your household to settle elsewhere, if you permanently relocate.

This period of time applies even if it extends past the expiration date of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**(3)** This coverage does not increase the limit of liability shown in the Schedule.

**(4)** Section **I** – Property Coverages, **D.** Coverage **D** – Loss Of Use in the policy form does not apply to this endorsement.

**4. Deductible**

The deductible amount, equal to that which applies to the peril of Fire, applies to loss or expense covered under this additional coverage. We will pay only that part of the total of all loss or expense payable under **3.** above that exceeds that deductible amount.

**5. Loss Or Expense Not Covered**

We will not pay:

**a.** For any diminution or reduction in the market value of any:

**(1)** "Covered real property"; or

**(2)** "Covered personal property";

whether or not such property is damaged;

**b.** For any damage resulting from the loss of or reduction in value of a pending sale of:

**(1)** "Covered real property"; or

**(2)** "Covered personal property";

**c.** To replace any fuel;

**d.** For any expense to:

**(1)** Demolish or remove; or

**(2)** Repair, replace, rebuild or restore;

any part of a "fuel system", other than those expenses provided for in **3.a.** or **b.** above; or


EXHIBIT A

**e.** For any damage that results from an escape from:

**(1)** One or more containers, tanks or vessels, that are, or were, used to hold liquid fuel and are a part of a "motor vehicle" or watercraft; or

**(2)** Related lines or parts, that are, or were, connected to a "motor vehicle" or watercraft.

**6.** For Form **HO 00 03,** under Section **I** – Perils Insured Against, Paragraph **A.2.c.(6)(e)** does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

**7.** For Form **HO 00 05,** under Section **I** – Perils Insured Against, Paragraph **A.2.(e)(5)** does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

**8.** When the Special Computer Coverage Endorsement is attached, Paragraph **2.b.(9)(e)** in that endorsement, under Perils Insured Against, does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

**9.** The Additional Coverages under Section **I** – Property Coverages and the Section **I** – Exclusions apply to this Property Remediation For Escaped Liquid Fuel Coverage.

**10.** The Section **I** – Conditions apply to this Property Remediation For Escaped Liquid Fuel Coverage except as provided in **C.** Section **I** – Conditions below.

**11.** This Property Remediation For Escaped Liquid Fuel Coverage does not apply to any "residence premises" at which the containers, tanks or vessels, described in **A.14.a.** above, have a total combined storage capacity of less than 100 U.S. gallons of liquid fuel.

Coverage, if any, for escape of liquid fuel from such containers, tanks or vessels is subject to those:

**a.** Exclusions;

**b.** Conditions;

**c.** Other provisions; and

**d.** Limits of Liability;

that apply to real and personal property under the policy to which this endorsement is attached.

**C. Section I – Conditions – Property Remediation For Escaped Fuel**

With respect to loss or expense described in **B. Section I – Property Coverages** above, **Section I Condition F. Other Insurance And Service Agreement (Section I Condition G. Other Insurance And Service Agreement** in Form **HO 00 05)** in the policy form, is deleted and replaced by the following:

**F. Other Insurance, Service Agreements And Government Funds**

If loss or expense covered in **B.** Section **I** – Property Coverages above is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss or expense that the limit of liability that applies under this endorsement bears to the total amount of insurance covering the loss or expense;

**2.** A service agreement, then this Property Remediation for Escaped Liquid Fuel Coverage is excess over any amounts payable under any such agreement. Service Agreement means a "fuel system" service plan, property restoration protection plan, or similar service or warranty agreement, even if it is characterized as insurance; or

**3.** A government fund, we will pay only the proportion of the loss or expense that the limit of liability that applies under this endorsement bears to the total amount payable for the loss or expense to the extent permitted by law.

**D. Section II – Liability Coverages**

**LIMITED LEAD AND ESCAPED LIQUID FUEL LIABILITY COVERAGE**

**1.** With respect to "bodily injury" or "property damage" described in **D.2.** below, the coverages provided by Section **II** – Liability Coverages, Coverage **E** – Personal Liability and Coverage **F** – Medical Payments To Others in the policy form, and the limits of liability stated on the Declarations page do not apply.

**2.** This coverage applies if a claim is made or a suit is brought against an "insured" for damages because of:

**a.** "Bodily injury" or "property damage" caused by an "occurrence" involving the escape of fuel from a "fuel system". However, this limited coverage does not apply to an "occurrence" of fire or explosion that results from such escaped fuel. Damages resulting from such an "occurrence" of fire or explosion are subject to the Coverage **E** limit of liability of the policy to which this endorsement is attached;

EXHIBIT A

**b.** "Bodily injury" caused by an "occurrence" involving the absorption, ingestion or inhalation of lead which is in or on an "insured location"; or

**c.** "Property damage" caused by an "occurrence" of lead contamination, but only if, immediately prior to the "occurrence", the lead was located at an "insured location".

NO OTHER LEAD OR ESCAPED LIQUID FUEL LIABILITY COVERAGE APPLIES UNDER THIS POLICY EXCEPT AS PROVIDED IN **D.2.** ABOVE AND **E.** BELOW.

**3.** If coverage applies as stated in **D.2.** above, we will:

**a.** Pay up to the Aggregate Limit of Liability stated in the Schedule for damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**b.** Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the Aggregate Limit of Liability stated in the Schedule for damages resulting from "bodily injury" or "property damage" described in **D.2.** above has been exhausted by payment of a judgment or settlement.

**4.** With respect only to applying the provisions of this coverage as described in **D.2.** above, "bodily injury" or "property damage" caused in whole or in part by an "occurrence" described in **D.2.** above shall be deemed to have been caused solely by such an "occurrence" regardless of any other covered cause or event contributing to the "bodily injury" or "property damage".

**5.** The Section **II – Additional Coverages** in the policy form apply with respect to this coverage as described in **D.** above except as provided in **E.** Section **II – Additional Coverages** below.

**6.** The Section **II – Conditions** in the policy form apply with respect to this coverage as described in **D.** above except as provided in **F.** Section **II – Liability Conditions** below.

**7.** This coverage does not apply to an "insured location" at which the containers, tanks or vessels described in **A.14.a.** above have a total combined storage capacity of less than 100 U.S. gallons of liquid fuel.

Coverage, if any, for an "occurrence" involving the escape of liquid fuel from such containers, tanks or vessels is subject to those:

**a.** Exclusions;

**b.** Conditions;

**c.** Other provisions; and

**d.** Limits of Liability;

that apply to Coverages **E** and **F** in the policy to which this endorsement is attached.

**E.  Section II – Additional Coverages**

With respect to coverage described in **D. Section II – Liability Coverages** above, Additional Coverage **D. Loss Assessment** in the policy form is deleted and replaced by the following:

**D.  Loss Assessment**

**1.** We will pay up to the Aggregate Limit of Liability as stated in the Schedule for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** An "occurrence" involving the escape of fuel from a "fuel system";

**b.** "Bodily injury" caused by an "occurrence", on property owned by all members collectively, involving the absorption, ingestion or inhalation of lead which occurs on an "insured location" containing the "residence premises";

**c.** "Property damage" caused by an "occurrence", on property owned by all members collectively, of lead contamination, but only if the lead originates at an "insured location" containing the "residence premises"; or

**d.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** We do not cover assessments charged against you or a corporation or association of property owners:

**a.** As required by law; or



EXHIBIT A

    **b.** In response to a request, demand or order by a governmental authority or court of law.

**3.** Regardless of the number of assessments, the Aggregate Limit of Liability stated in the Schedule is the most we will pay for loss arising out of:

    **a.** All accidents, including continuous or repeated exposure to the same general harmful conditions; or

    **b.** All covered acts of one or more directors, officers or trustees. An act involving more than one director, officer or trustee is considered to be a single act.

    THE LIMIT APPLICABLE TO THIS LOSS ASSESSMENT COVERAGE DOES NOT INCREASE THE AGGREGATE LIMIT OF LIABILITY STATED IN THE SCHEDULE.

**4.** Section **II** Condition **I.** Policy Period in this endorsement and in the policy form to which this endorsement is attached does not apply to this coverage.

**F. Section II – Liability Conditions**

With respect to coverage described above in **D.** Section II – Liability Coverages:

**1.** Conditions **D. Duties Of An Injured Person – Coverage F – Medical Payments To Others** and **E. Payment Of Claim – Coverage F – Medical Payments To Others** in the policy form are deleted; and

**2.** Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **I. Policy Period** in the policy form are deleted and replaced by the following:

**A. Aggregate Limit Of Liability**

Our total liability in any one policy period for all damages resulting from the total of all "bodily injury" or "property damage" during the policy period will not be more than the Limited Lead and Escaped Liquid Fuel Liability Coverage Aggregate Limit of Liability stated in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of claims made.

The "occurrence" limit of liability does not apply to this coverage.

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Limit of Liability described in **A.** Aggregate Limit of Liability above. This condition will not increase the Limit for this coverage.

**I. Policy Period**

This endorsement applies to "bodily injury" or "property damage" described in **D.2.** above which occurs during the policy period.

All other provisions of the policy not specifically modified by this endorsement apply.

Includes copyrighted material of Insurance Services Office, Inc.

EXHIBIT A

HOMEOWNERS
HO 23 70 07 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM EXTERIOR PAINT OR WATERPROOFING EXCLUSION – SEACOAST – FLORIDA

**A. Exclusion**

Coverage for any building or structure under this policy excludes loss caused by:

**1.** Windstorm or hail; or

**2.** Windstorm during a hurricane;

to paint or waterproofing material applied to the exterior of the building or structure.

**B. Hurricane Described**

**1.** A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

**2.** A hurricane occurrence:

**a.** Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

**b.** Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

All other provisions of this policy apply.

   Copyright, Insurance Services Office, Inc.,  2000   



## IMPORTANT FLOOD INSURANCE NOTICE

Your homeowners or dwelling policy does NOT provide coverage for loss caused by flood or mudslide, which is defined, in part, by the National Flood Insurance Program as:

A general and temporary condition of partial or complete inundation of normally dry land areas from overflow of inland or tidal waters or from the unusual and rapid accumulation or runoff of surface waters from any source.

If you are required by your mortgage lender to have flood insurance on your property, or if you feel that your property is susceptible to flood damage, insurance covering damage from flood is available on most buildings and contents in participating communities through the National Flood Insurance Program.

Information about flood insurance and whether your community participates in the program can be obtained from your insurance company, from your insurance agent/broker, or directly from the National Flood Insurance Program by calling 1-800-638-6620 or via their website at http://www.floodsmart.gov.

If you purchase the maximum limits available through the National Flood Insurance Program, and require additional limits, contact your agent/broker for information regarding the Lexington Insurance Company's Excess Flood Program.  Contents coverage may be available with the flood policy for an additional premium.

LEX 00 14 09 08

EXHIBIT A

LEX 00 31 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRAMPOLINE EXCLUSION

It is hereby understood and agreed, this insurance does not apply to "bodily injury", "property damage", or any other loss, cost or expense, caused directly or indirectly, in whole or in part by a trampoline owned by or in the care, custody or control of an "insured".

This endorsement applies to all coverages, and coverage parts, that form part of this policy.

All other terms, conditions and exclusions of the policy remain the same.

LEX 00 31 11  04

EXHIBIT A

Page 1 of 1

LEX 00 32 08 04

**This endorsement, effective 12:01 A.M.,** 08/14/2020
**Forms a part of Policy No.:** 23247975 - 01
**Issued to:** Villamar, Sara
**By:** Lexington Insurance Company

# LEAKAGE OF POLLUTANTS FROM UNDERGROUND STORAGE TANKS EXCLUSION

This endorsement modifies insurance provided by the policy:

The following exclusion is added to Paragraph **1.** of **SECTION II – EXCLUSIONS** as follows:

**Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

Caused by, arising out of, or resulting from the leakage of "pollutants" from underground storage tanks at the "insured location" including all loss, costs, and expenses resulting therefrom.  Such "bodily injury" or "property damage" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "bodily injury" or "property damage".

As used in this endorsement, "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

All other terms and conditions the policy remain the same.

EXHIBIT A

**ENDORSEMENT #**

**This endorsement, effective 12:01 A.M., 08/14/2020**
**Forms a part of Policy No.: 23247975 - 01**
**Issued to: Villamar, Sara**
**By:  LEXINGTON INSURANCE COMPANY**

# FLORIDA NAMED STORM DEDUCTIBLE
# ANNUAL AGGREGATE DEDUCTIBLE
### (FOR USE WITH HO 00 03 AND HO 00 05)

This endorsement modifies insurance provided by the policy:

We will pay only that part of the total of the loss for all Section I Property Coverages that exceeds the Named Storm Deductible stated in this endorsement.  This deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by a "Named Storm Event". Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.  No other deductible provision in the policy applies to direct physical loss caused by a "Named Storm Event", except as otherwise provided within this endorsement.

**Named Storm Deductible:**
In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to **5%*** or 26,878$* of the limit of liability that applies to Coverage A – Dwelling in the policy to which this endorsement is attached, subject to a minimum of $3,000.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

When this deductible applies to more than one "Named Storm Event", the following conditions apply:

1.  If the full amount of the Named Storm Deductible is deducted from the amount of loss or damage as the result of a "Named Storm Event", the All Other Perils deductible as shown in the Declarations shall apply to all future "Named Storm Events" covered by this policy;

2.  If the amount of loss or damage from the "Named Storm Event" does not exceed the Named Storm Deductible, you shall report such loss or damage to us, provide us with documentation substantiating such loss or damage, and we will document the amount of loss or damage incurred from such event;

3.  If a subsequent covered "Named Storm Event" occurs, we shall deduct from the amount of loss or damage the greater amount of:

    a.    The Named Storm Deductible less the amount documented in Paragraph 2. above; or
    b.    The All Other Perils deductible as stated in the Declarations.

    If the amount of loss is greater than the deductible amount as determined in 3.a. or 3.b. above, we shall pay the difference to you, and Paragraph 4. shall apply to all subsequent "Named Storm Events".

    If the amount of loss is less than the deductible amount as determined in 3.a. or 3.b. above, you shall document the amount of such loss, as per Paragraph 2. above, and the provisions of this Paragraph 3 shall apply to any subsequent "Named Storm Event".

EXHIBIT A

4. Once you have incurred a deductible amount at or above the Named Storm Deductible, the All Other Perils deductible as stated in the Declarations shall apply to all "Named Storm Events" covered by this policy.

5. Provision as respects multiple "Named Storm Event" losses occurring during any one calendar year:

   If this policy is the renewal of a policy that we issued to you, and you have incurred any Named Storm Deductible under that prior policy during the calendar year in which this policy is effective, all such Named Storm Deductible amounts incurred shall apply to this policy, under the terms of this endorsement, as though such deductible amounts had been incurred during this policy period, but only for loss or damage from a "Named Storm Event" occurring during the calendar year in which this policy is effective.  In the event the deductibles for the two policies are not equal, we shall apply:

   a. The highest Named Storm Deductible of the two policies; and
   b. The highest All Other Perils deductible of the two policies.

The following definitions apply to this endorsement:

1. "Named Storm" means a storm system that has been declared to be a tropical storm or a hurricane by the National Hurricane Center of the National Weather Service.

   Such tropical storm or hurricane occurrence:  (i) begins at the time a tropical storm or hurricane watch or warning is issued by the National Hurricane Center of the National Weather Service, and (ii) ends 72 hours following the termination of the last tropical storm or hurricane watch or warning issued by the National Hurricane Center of the National Weather Service.

2. "Named Storm Event" means all windstorm arising out of a single "Named Storm".

All other terms and conditions of the policy remain the same.

EXHIBIT A

**This endorsement, effective 12:01 A.M., 08/14/2020**
**Forms a part of Policy No.: 23247975 - 01**
**Issued to: Villamar, Sara**
**By:  LEXINGTON INSURANCE COMPANY**

## MAXIMUM PAYABLE AMOUNT IF OTHER INSURANCE PROVIDES COVERAGE FOR A PERIL NOT COVERED BY THIS POLICY

This endorsement modifies insurance provided by the policy: Paragraph

**S.** (Paragraph **T.** in Form HO 00 05) is added to **SECTION I –**

**CONDITIONS** as follows:

**S. Maximum Payable Amount if Other Insurance Provides Coverage for a Peril Not Covered by this Policy**

**1.** If a dwelling is a "total loss" and the loss or damage to the dwelling is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then:

**a.** the most we will pay under Coverage A – Dwelling is the limit of liability for Coverage A shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the dwelling, and

**b.** the most we will pay under Coverage C – Personal Property is the limit of liability for Coverage C shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the personal property (or if a special limit of liability applies to your personal property, then the most we will pay under Coverage C – Personal Property for such personal property is the special limit shown in the policy minus the amount paid or payable under such other insurance policy or policies for such personal property).

However, we might pay less than the aforementioned maximum amount(s) under subparagraphs **a.** or **b.** above if the loss or damage to the dwelling or personal property, as applicable, attributable to the covered peril is less than the applicable maximum amount(s).

**2.** If an other structure covered under this policy is a "total loss" and the loss or damage to such other structure is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then the most we will pay under Coverage B – Other Structures is the limit of liability for Coverage B shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the other structure. However, we might pay less than the aforementioned maximum amount if the loss or damage to the other structure attributable to the covered peril is less than the applicable maximum amount.

As used in herein, "total loss" means that:

**1.** the dwelling or other structure, as applicable, is completely destroyed regardless of whether any damage is done to the foundation or slab, or

**2.** the dwelling or other structure, as applicable, is in such condition after the loss that the standard method of rebuilding or repairing the dwelling or other structure, as applicable, is to raze the structure except for the foundation or slab or including all or part of the foundation or slab and rebuild the entire structure, whether the structure is actually rebuilt or not.

All other terms and conditions of the policy remain the same

LEX 00 82 06 18

**EXHIBIT A**

HOMEOWNERS LEX

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - FLORIDA

The following provisions supersede any contrary provisions of the Homeowners 3 - Special form, Homeowners 4 - Contents Broad Forms, Homeowners 5 – Comprehensive Form, and Homeowners 6 - Unit Owners Form.

**DEDUCTIBLE CLAUSE** – is deleted and replaced with the following:

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under **SECTION I – PROPERTY COVERAGES** that exceed the applicable deductible amount or percentage shown in the Declarations.  Under no circumstance shall the applicable deductible be less than the All Other Peril (AOP) deductible shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**B. Coverage B – Other Structures.** Subparagraph **3.** of Paragraph **B.** in Forms **HO 00 03** and **HO 00 05** is deleted and replaced by the following:

**3.** The limit of liability for this coverage shall not exceed the amount shown in the Declarations.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures** Subparagraph **2.c.(1)** of Paragraph **A.** in Form **HO 00 03** (Subparagraph **2.a.** of Paragraph **A.** in Form **HO 00 05**) is deleted and replaced by the following:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.  This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

Subparagraph **2.c.(5)** of Paragraph **A.** in Form **HO 00 03** (Subparagraph **2.d.** of Paragraph **A.** in Form **HO 00 05**) is deleted in its entirety and replaced by the following:

**(5)** Constant or repeated seepage or leakage of water or the presences or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure;

**12.** **Accidental Discharge Or Overflow of Water Or Steam** Subparagraph **b.(5)** in Form **HO 00 06** is deleted and replaced by the following:

**(5)** To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings or a structure.

Subparagraph **b.(4)** of Paragraph **A.** in Form **HO 00 04** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of

EXHIBIT A

weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

The following peril is added:

**SINKHOLE COLLAPSE**

This peril means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

Subparagraph **2. Earth Movement** of Paragraph **A.** under **SECTION I – EXCLUSIONS** in Forms **HO 00 03** and **HO 00 05** (Paragraph **2. Earth Movement** under **SECTION I – EXCLUSIONS** in Forms **HO 00 04** and **HO 00 06**) does not apply to this peril.

**SECTION I – EXCLUSIONS**

Subparagraph **10. Act of Terrorism** is added to Paragraph **A.** in Forms **HO 00 03** and **HO 00 05** (Paragraph **10. Act of Terrorism** is added to **SECTION I – EXCLUSIONS** in Forms **HO 00 04** & **HO 00 06**) as follows:

**10. Act of Terrorism**

**Act of Terrorism** means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

It is hereby understood and agreed, that notwithstanding any provision to the contrary, it is agreed that this policy excludes, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with biological, chemical, nuclear or radioactive pollution or contamination arising out of any act of terrorism regardless of any other cause

or event contributing concurrently or in any other sequence to the loss.

The policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any biological, chemical, nuclear or radioactive pollution or contamination arising out of an act of terrorism.

Nothing in this exclusion shall be construed to exclude loss, damage or cost or expense of whatsoever nature arising out of fire following any nuclear incident.

**SECTION I - CONDITIONS**

**A.  Insurable Interest and Limit Of Liability** is deleted and replaced by the following:

**A.  Insurable Interest and Limit Of Liability**

1.  Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

2.  **Sub-limit Of Liability**
    Subject to Paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000.  This sub-limit is within, but does not increase the Coverage **E** limit of liability.

3.  The limit of liability in **1.** above and in sub-limit in **2.** above apply regardless of the number of "insureds," claims made or persons injured.

4.  Our total limit of liability under Coverage **F** for all medical expense payable for "bodily injury" to one

    person as the result of one accident will not be more than the limit of liability for Coverage **F** as shown in the Declarations.

EXHIBIT A

Subparagraph **2.f.** is added to Paragraph **C. Loss Settlement** in Form **HO 00 03** (Subparagraph **1.** in Form **HO 00 04**; Subparagraph **2.c.** in **HO 00 06**) as follows:

Subparagraph **2.f.** is added to Paragraph **D. Loss Settlement** in Form **HO 00 05** as follows:

    **f.** If, at the time of loss, the building(s) under Coverage A or B are being repaired, renovated, rebuilt or under construction, the maximum amount of insurance on the damaged building will be the proportion of the value of the building that the actual cash value of the building, on that date, bears to the value when completed.  You and we agree that, for insurance purposes only, the value of the building is the amount shown on the Declarations.

Paragraph **Q. Concealment Or Fraud** in Forms **HO 00 03** & **HO 00 06** (Paragraph **P.** in Form **HO 00 04** and Paragraph **R.** in Form **HO 00 05**) is deleted and replaced with the following:

    **Q. Concealment Or Fraud**

      We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

      **1.** Intentionally concealed or misrepresented any material fact or circumstance;

      **2.** Engaged in fraudulent conduct; or

      **3.** Made false statements;

      relating to this insurance.  In addition to not providing coverage, we at our option may choose to void the entire policy.

## SECTION II - EXCLUSIONS

**E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others** Subparagraph **1.** of Paragraph **E.** is deleted and replaced with following:

    Coverages **E** and **F** do not apply to the following:

    **1. Expected or Intended Injury**

      "Bodily injury" or "property damage" which is reasonably expected or intended from the standpoint of the "insured" even if the resulting "bodily injury" or "property damage":

      **a.** Is of a different kind, quality or degree than initially expected or intended; or

      **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      The reasonable person standard applies even if the "insured" lacked the mental capacity to formulate an intent or expectation.

**E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others** Subparagraph **9.** is added to Paragraph **E.** as follows:

    Coverages **E** and **F** do not apply to the following:

    **9. Punitive or Exemplary Damages**

      Punitive or exemplary damages alleged in any claim or suit nor do we have any obligation to pay any costs, interests, or damages attributable to such punitive or exemplary damages.

## SECTION II – CONDITIONS

Paragraph **J. Concealment Or Fraud** is deleted and replaced with the following:

    **J. Concealment Or Fraud**

      We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

      **1.** Intentionally concealed or misrepresented any material fact or circumstance;

      **2.** Engaged in fraudulent conduct; or

      **3.** Made false statements;

      relating to this insurance.  In addition to not providing coverage, we at our option may choose to void the entire policy.

## SECTION I AND II – CONDITIONS

**C. Cancellation** Subparagraphs **2.** and **3.** of Paragraph **C.** are deleted and replaced with the following:

    **2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect.  This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

EXHIBIT A

     **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

     **b.** When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

     **c.** When this policy has been in effect for more than 90 days, we may cancel for any reason (other than non-payment of premium) by letting you know at least 45 days before the date cancellation takes effect.

  **3.** If this policy is cancelled, we will send you any premium refund due. If you or we cancel, any refund due will be calculated on a pro rata basis. However, if you cancel, we will retain no less than the Minimum Earned Premium shown in the Declarations.

**C. Cancellation** Subparagraph **5** is added to Paragraph **C.** as follows:

  **5.** The cancellation will be effective even if we have not made or offered a refund.

Paragraph **D. Nonrenewal** is deleted and replaced with the following:

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

EXHIBIT A

**This endorsement, effective 12:01 A.M.,   08/14/2020**
**Forms a part of Policy No.:  23247975 - 01**
**Issued to:  Villamar, Sara**
**By:  Lexington Insurance Company**

## FARM OPERATIONS EXCLUSION

This endorsement modifies insurance provided by the policy:

1. <u>Definitions</u>

   **"Farm Operations" -** As used herein, the term "farm operations" means any farming activities including, but not limited to, the following: the cultivation and tillage of soil, dairying, the production, cultivation, growing and harvesting of any agricultural, aquacultural, floricultural or horticultural commodities including the legal or illegal growth of marijuana, the growing and harvesting of forest products upon forest land, the keeping and raising of livestock including horses, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes, bees, fur-bearing animals, and any forestry or lumbering operations.   Such activities, mentioned herein or otherwise, are considered "farm operations" whether they are intended for sale or for home use.

2. <u>No Section I – Property Coverages</u>

   We will not provide any **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property, and/or Coverage D – Loss of Use** for any loss, cost, damage, or expense caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "farm operations" conducted at the "insured location" and/or any equipment, machinery, furnishings, fixtures, tools, utensils,  materials, supplies or any other items whatsoever stored or used in connection to such "farm operations" at the "insured location."

3. <u>No Section II – Liability Coverages</u>

   We will not provide any **Coverage E – Personal Liability** and/or **Coverage F – Medical Payments To Others** for any "bodily injury," "property damage" or any loss, cost, damage, expense, injury, claim or "suit" caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "farm operations" conducted at the "insured location" and/or any equipment, machinery, furnishings, fixtures, tools, utensils,  materials, supplies or any other items whatsoever stored or used in connection to such "farm operations" at the "insured location."

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

EXHIBIT A

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A - DWELLING ENDORSEMENT

### (FOR HO 03 and HO 05)

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

---

Additional Amount of Insurance:   25% *

The Additional Amount of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above. However, this Additional Amount of Insurance shall only apply to loss or damage to the dwelling under Coverage A and thus, shall not apply to any other coverage including, but not limited to, coverage for other structures, personal property, loss of use or any additional coverages.

---

*Entry may be left blank if shown elsewhere in this policy for this coverage.

---

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A.  If you have:

    1.  Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

        a.  The property evaluations we make; and

        b.  Any increases in inflation; and

    2.  Notified us, within 30 days after completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

then we will provide an additional amount of insurance, up to the amount described in the Schedule of this endorsement.

The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B.  Subparagraph 2. of Paragraph C. Loss Settlement (Paragraph D. Loss Settlement in Form HO 05) under SECTION I - CONDITIONS is deleted in its entirety and replaced with the following:

    2.  Buildings covered under Coverage A at replacement cost without deduction for depreciation, subject to the following:

        a.  If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1)  Up to the sum of the limit of liability under this policy that applies to the building and the additional amount of insurance as shown in the Schedule of this endorsement;

        (2)  The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        (3)  The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

        b.  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

        (1)  The actual cash value of that part of the building damaged; or

EXHIBIT A

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include:

(1) The additional amount of insurance shown in the Schedule of this endorsement;

(2) The value of excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(3) The value of those supports described in (2) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(4) The value of underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement (Condition D. Loss Settlement in Form HO 05), provided you notify us of

your intent to do so within 180 days after the date of loss.

3. Buildings covered under Coverage B at replacement cost without deduction for depreciation, subject to the following:

a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(1) The limit of liability under this policy that applies to the building;

(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building imme-

EXHIBIT A

diately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 3.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 3.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement (Condition D. Loss Settlement in Form HO 05), provided you notify us of your intent to do so within 180 days after the date of loss.

C. EXCLUSION

If you have purchased coverage for earthquake, then notwithstanding this endorsement, the Additional Amount of Insurance provided by this endorsement does not apply if the loss or damage under Coverage A is caused directly or indirectly by "earth movement". As used herein, "earth movement" means:

1. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

2. Landslide, mudslide or mudflow;

3. Subsidence or sinkhole; or

4. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

If this exclusion applies, then Subparagraph 2.a.(1) of Paragraph C. Loss Settlement (Paragraph D. Loss Settlement in Form HO 05) under SECTION I – CONDITIONS as amended by this endorsement is deleted and replaced with the following:

(1) The limit of liability under this policy that applies to the building without regard to the Additional Amount of Insurance;

All other terms and conditions of the policy remain the same.

EXHIBIT A

**This endorsement, effective 12:01 A.M.,** 08/14/2020
**Forms a part of Policy No.:** 23247975 - 01
**Issued to:**  Villamar, Sara
**By:** Lexington Insurance Company

## (1) OUTDOOR SWIMMING POOL OR OTHER SIMILAR BASIN – COVERAGE PROVIDED UNDER COVERAGE B ONLY AND
## (2) EXCLUSION FOR FAILURE TO MAINTAIN PROPER WATER LEVEL IN A SWIMMING POOL ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Notwithstanding any other provision of this policy to the contrary, an "outdoor swimming pool, spa, hot tub, or any other similar basin" shall only be covered under Coverage B – Other Structures.

As used herein, "outdoor swimming pool, spa, hot tub, or any other similar basin" means a swimming pool, spa, hot tub, or any other similar basin which is not entirely contained within the outer, solid, weight-bearing frame of your dwelling, including the basement.

Paragraph **10.** is added to **SECTION I – EXCLUSIONS** as follows:

**10.   Failure to Maintain Proper Water Level in a Swimming Pool**

The insured's failure or any other person's failure while acting on the insured's behalf, to maintain the proper water level in your swimming pool in accordance with maintenance guidelines governing the care of such swimming pool.

All other terms and conditions of the policy remain the same.

**EXHIBIT A**

**This endorsement, effective 12:01 A.M.,**  08/14/2020
**Forms a part of Policy No.:** 23247975 - 01
**Issued to:** Villamar, Sara
**By:** Lexington Insurance Company

## SPECIFIC BUILDING MATERIALS EXCLUSION

This endorsement modifies insurance provided by the policy:

**I.** With respect to **Coverage A – Dwelling**, **Coverage B – Other Structures**, **Coverage C – Personal Property**, and **Coverage D – Loss of Use**, we do not cover direct or indirect loss or damage, loss of use, or any ensuing loss or resulting damage arising out of or caused by: (i) any material in or the composition of the "specific building material(s), (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)" which results in loss or damage to such "specific building material(s)" or any dwelling, other structures, personal property, or property of others.

**II.** **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury", "property damage" or any other loss, cost, damage, expense, injury, claim or "suit", caused by, arising out of, or resulting directly or indirectly, in whole or in part from: (i) any material in or the composition of the "specific building material(s)", (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

In addition, we will not pay any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

As used herein, "specific building material(s)" means drywall, plasterboard, wallboard, gypsum board, sheetrock, blue board, or greenboard and includes the outer paper or other covering which forms a part of such aforementioned building materials.

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

EXHIBIT A

This endorsement, effective 12:01 A.M., 08/14/2020
Forms a part of Policy No.: 23247975 - 01
Issued to: Villamar, Sara
By: Lexington Insurance Company

## INFLATION GUARD FOR COVERAGE A ONLY NOTICE

NOTICE:  The Coverage A limit of liability as shown on the Declarations applies to the entire policy period.  If you renew this policy, such Coverage A limit of liability will be automatically increased by 7.51 % unless a higher Coverage A limit of liability is requested.

EXHIBIT A

**This endorsement, effective 12:01 A.M., 08/14/2020**
**Forms a part of Policy No.: 23247975 - 01**
**Issued to: Sara Villamar**
**By:  Lexington Insurance Company**

## INCIDENTAL BUSINESS COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Notwithstanding "Section I and Section II Total Business Exclusion" and any other provisions of this policy to the contrary, we _only_ cover your "business(es)" described in the Schedule below, conducted at or from the "residence premises", subject to the provisions of this endorsement.

### SCHEDULE

Description of Business(es):

**1.**
**2.**
_____

## SECTION I – PROPERTY COVERAGES

**1.** **Coverage B – Other Structures** (for **HO 00 03** and **HO 00 05** ):  If any "business(es)" described in the Schedule of the "Incidental Business Coverage Endorsement" is located within an Other Structure, then Subparagraph **B.2.c.** does not apply to such Other Structure.

**2.** **Coverage C – Personal Property, 3. Special Limits of Liability** (for **HO 00 03, HO 00 04, HO 00 05,** and **HO 00 06**), Subparagraphs **C.3.h.** and **C.3.i.** are deleted in their entirety and replaced with the following:

**h.** $2,500 is the most we will pay for property, on the "residence premises", used primarily for "business" purposes, irrespective of the number of "business(es)" shown in the Schedule of the "Incidental Business Coverage Endorsement".

**i.** $500 is the most we will pay for property, away from the "residence premises", used primarily for "business" purposes, irrespective of the number of "business(es)" shown in the Schedule of the "Incidental Business Coverage Endorsement".

## SECTION II – EXCLUSIONS

Subparagraph **(2)** of Paragraph **E.2.b.** (for **HO 00 03, HO 00 04, HO 00 05,** and **HO 00 06**) is deleted and replaced with the following:

[**b.** This Exclusion **E.2.** does not apply to:]

   **(2)** The necessary or incidental use of the "residence premises" to conduct the "business(es)" described in the Schedule of the "Incidental Business Coverage Endorsement", provided that, both of the following conditions are met:

      **(a)** Such "business" does not employ any "employees" or contract with any independent contractors; and

      **(b)** No customers or clients enter the "residence premises" for any "business" purpose, including, but not limited to, the purchase or sale of any products or the provision of any services.

      Solely for the purposes of liability assumed under this exception, all attorneys' fees and litigation expenses shall be deemed to be damages because of "bodily injury" or "property damage" and

EXHIBIT A

shall be included within and reduce the Limit of Liability for Coverage **E** shown on the Declarations.

Notwithstanding the foregoing, Exclusion **E.3.** which excludes coverage for professional services still applies and as such, Coverages **E.** and **F.** do not apply to "bodily injury" or "property damage" arising out of the rendering or failure to render professional services.

If coverage for "personal injury" is provided by endorsement to the **HO 00 03**, **HO 00 04, HO 00 05,** or **HO 00 06** policy, then, notwithstanding the foregoing, Coverages **E.** and **F.** do not apply to "personal injury" arising out of the "business(es)" described in the Schedule of the "Incidental Business Coverage Endorsement".

All other terms and conditions of the policy remain the same.

EXHIBIT A

**This endorsement, effective 12:01 A.M.,  08/14/2020**
**Forms a part of Policy No.:  23247975 - 01**
**Issued to:  Villamar, Sara**
**By:  LEXINGTON INSURANCE COMPANY**

### SECTION I AND SECTION II TOTAL BUSINESS EXCLUSION

This endorsement modifies insurance provided by the policy:

1.  <u>No Section I – Property Coverages</u>

    We will not provide any **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property, and/or Coverage D – Loss of Use** for any loss, cost, damage, or expense caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "business" at the "insured location" and/or any services, goods, products, inventory, stock, tools, materials, supplies, equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

2.  <u>No Section II – Liability Coverages</u>

    We will not provide any **Coverage E – Personal Liability** and/or **Coverage F – Medical Payments To Others** for the following:

    A.  "Bodily injury," "property damage," or any other loss cost, damage, expense, injury, claim, or suit caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "business" at the "insured location" including, but not limited to:

        a.  Being on, approaching, or leaving the "insured location" for any "business" purpose or activity,

        b.  Renting or purchasing services, goods, or products, whether or not such services, goods, or products are actually rented or purchased in connection with any "business" at the "insured location,"

        c.  Browsing or viewing services, goods, or products in connection with any "business" at the "insured location," or

        d.  Delivering, transporting or picking up any services, goods, products, inventory, stock, tools, materials, supplies, equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

    B.  "Bodily injury," "property damage," or any other loss cost, damage, expense, injury, claim, or suit caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any services, goods, products, inventory, stock, tools, materials, supplies,

LEX 00 195 04 14

# EXHIBIT A

equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

 

_____

Signature of Insured

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement, effective 12:01 A.M., 08/14/2020**
**Forms a part of Policy No.: 23247975 – 01**
**Issued to: Sara Villamar**
**By:** LEXINGTON INSURANCE COMPANY

# EXISTING DAMAGE EXCLUSION
(FOR USE WITH FORMS **HO 00 03**, **HO 00 04**, **HO OO 05**, **HO 00 06**, AND **DP 00 03**)

This endorsement modifies insurance provided by the policy.

The following exclusion is added to **Paragraph A.** under **SECTION I – EXCLUSIONS** of the **HOMEOWNERS 3 – SPECIAL FORM** and **HOMEOWNERS 5 – COMPREHENSIVE FORM** policies:

**10.  Existing Damage**

Existing Damage means the following:

a.  Any damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date;

b.  Any claims and/or damages caused by, arising out of, or resulting directly or indirectly, in whole or in part, from workmanship, repairs and/or lack of repairs relating to or arising from damage which occurred prior to policy inception; or

c.  Any claims and/or damages unless all structures covered by your previous policy have been fully and completely repaired.  Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss occurring during this policy period.

The following exclusion is added under **SECTION I – EXCLUSIONS** of the **HOMEOWNERS 4 – CONTENTS BROAD FORM**, and **HOMEOWNERS 6 – UNIT- OWNERS FORM** policies:

**10.  Existing Damage**

Existing Damage means the following:

a.  Any damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date;

b.  Any claims and/or damages caused by, arising out of, or resulting directly or indirectly, in whole or in part, from workmanship, repairs and/or lack of repairs relating to or arising from damage which occurred prior to policy inception; or

c.  Any claims and/or damages unless all structures covered by your previous policy have been fully and completely repaired.  Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss occurring during this policy period.

LEX 00 202 06 18

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusion is added to **Paragraph A.** under **GENERAL EXCLUSIONS** of the **DWELLING PROPERTY 3 – SPECIAL FORM** policy:

**10.  Existing Damage**

 Existing Damage means the following:

a. Any damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date;

b. Any claims and/or damages caused by, arising out of, or resulting directly or indirectly, in whole or in part, from workmanship, repairs and/or lack of repairs relating to or arising from damage which occurred prior to policy inception; or relating

c. Any claims and/or damages unless all structures covered by your previous policy have been fully and completely repaired.  Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss occurring during this policy period.

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

EXHIBIT A

**HOMEOWNERS**
**LEX 00 207 05 16**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR CARE SERVICES BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR CARE SERVICES BUSINESS

**A.** "Business", as defined in the policy, means:

**1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

**2.** Any other activity engaged in for money or other compensation, except the following:

  **a.** One or more activities:

   **(1)** Not described in **b.** and **c.** below; and

   **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

  **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; or

  **c.** The rendering of care services to a relative of an "insured".

**3.** Care services which include, but are not limited to, training, education, supervision, or recreation of children, the disabled, or the elderly, provided by an "insured" to any person except to another "insured" or to a relative of an "insured".  Such care services are considered a "business" even if the "insured" does not engage in such services on a full-time, part-time or occupational basis.  Additionally, such care services are considered a "business" even if the insured does not receive money or any other type of compensation for such service.

**B.** With respect to the above, coverage does not apply to or is limited with respect to care services which are considered a "business". For example, this policy:

**1.** Does not provide:

  **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

  **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

**2.** Limits Section **I** coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

  **a.** On the "residence premises" for the care services "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

  **b.** Away from the "residence premises" for the care services "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

**All other terms and conditions of this policy remain the same.**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRONE EXCLUSION

(Applicable to **HO 00 03**, **HO 00 04**, **HO 00 05**, **HO 00 06**, and **HO 00 08** policy forms)

## DEFINITIONS

For **HO 00 03**, **HO 00 04**, **HO 00 05**, **HO 00 06**, and **HO 00 08**: Subparagraph **b.(1)** of paragraph **B.1.** is deleted in its entirety and replaced with the following:

**b.** For the purpose of this definition:

   **(1)** Aircraft means any contrivance used or designed for flight.  Aircraft also means any unmanned aerial vehicle or aircraft commonly known as a drone.  Except for unmanned aerial vehicles or aircraft commonly known as drones, aircraft does not mean any model or hobby aircraft not used or designed to carry people or cargo.

## SECTION I - PROPERTY COVERAGES

For **HO 00 03**, **HO 00 05**, and **HO 00 08**: Subparagraph **4.d.** (**Property Not Covered**) under paragraph **C. Coverage C - Personal Property** is deleted in its entirety and replaced with the following:

For **HO 00 04**: Subparagraph **4.d.** (**Property Not Covered**) under paragraph **A. Coverage C – Personal Property** is deleted in its entirety and replaced with the following:

For **HO 00 06**: Subparagraph **4.d.** (**Property Not Covered**) under paragraph **B. Coverage C – Personal Property** is deleted in its entirety and replaced with the following:

**4. Property Not Covered**

  We do not cover:

   **d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft or any unmanned aerial vehicles or aircraft commonly known as drones including any parts whether or not attached to the unmanned aerial vehicles or aircraft commonly known as drones.

    Except for unmanned aerial vehicles or aircraft commonly known as drones, we do cover model or hobby aircraft not used or designed to carry people or cargo.

For **HO 00 03**, **HO 00 05**, and **HO 00 08**: Subparagraph **3.d.** (**Trees, Shrubs And Other Plants**) of paragraph **E. Additional Coverages** is deleted in its entirety and replaced with the following:

For **HO 00 04**: Subparagraph **3.d.** (**Trees, Shrubs And Other Plants**) of paragraph **C. Additional Coverages** is deleted in its entirety and replaced with the following:

For **HO 00 06**: Subparagraph **3.d.** (**Trees, Shrubs And Other Plants**) of paragraph **D. Additional Coverages** is deleted in its entirety and replaced with the following:

**3. Trees, Shrubs And Other Plants**

  We cover trees, shrubs, plants or lawns, you solely own at the location of the "residence premises", for loss caused by the following Perils Insured Against:

   **d.** Aircraft, except unmanned aerial vehicles or aircraft commonly known as drones;

## SECTION I – PERILS INSURED AGAINST

For **HO 00 03**: Subparagraph **5. Aircraft** of paragraph **B. Coverage C – Personal Property** is deleted in its entirety and replaced with the following:

For **HO 00 04**, **HO 00 06**, and **HO 00 08**: Paragraph **5. Aircraft** is deleted in its entirety and replaced with the following:

**5. Aircraft**

  This peril includes self-propelled missiles and spacecraft.

  However, this peril does not include unmanned aerial vehicles or aircraft commonly referred to as drones.

For **HO 00 05**: Subparagraph **1.d.** of paragraph **C.** Under Coverage **C** is deleted in its entirety and replaced with the following:

**d.** Aircraft (not including unmanned aerial vehicles or aircraft commonly known as drones), vehicles, vandalism and malicious mischief;



EXHIBIT A

**SECTION II – ADDITIONAL COVERAGES**

For **HO 00 03**, **HO 00 04**, **HO 00 05**, **HO 00 06**, and **HO 00 08**: Subparagraph **2.e.(3)** of paragraph **C. Damage to Property of Others** is deleted in its entirety and replaced with the following:

**2.** We will not pay for "property damage":

  **e.** Arising out of:

    **(3)** The ownership, maintenance, occupancy, operation use, loading or unloading of aircraft including unmanned aerial vehicles or aircraft commonly known as drones, hovercraft, watercraft or "motor vehicles".

    This exclusion **e.(3)** does not apply to a "motor vehicle" that:

      **(a)** Is designed for recreational use off public roads;

      **(b)** Is not owned by an "insured"; and

      **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**All other terms and conditions of the policy remain the same.**

EXHIBIT A

**This endorsement, effective 12:01 A.M.,**            **LEX 00 217 05 18**
**Forms a part of Policy No.:**  23247975 - 01
**Issued to:**  Villamar, Sara
**By:**  LEXINGTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS ASSESSMENT COVERAGE

### SCHEDULE*

| | |
|---|---|
| **A.** "Residence Premises" – Additional Amount Of Insurance: $1,000 | |
| **B.** Additional Locations<br><br>Location Of Unit And Limit Of Liability | |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**1. Additional Insurance – Residence Premises**

We will pay, up to the additional amount of insurance shown in **A.** in the Schedule above, for one or more assessments arising out of a single loss covered under:

**a.** Section **I** Additional Coverage **E.7.** Loss Assessment (This is Additional Coverage **C.7.** in Form **HO 00 04** and **D.7.** in Form **HO 00 06.**);

**b.** Section **II** – Additional Coverage **D.** Loss Assessment; or

**c.** Both Section **I** and Section **II.**

**2. Additional Locations**

We will pay, up to the limit of liability shown in **B.** in the Schedule, your share of covered loss assessments as described in Section **I** Additional Coverage **E.7.** and Section **II** – Additional Coverage **D.** of the policy, arising out of the premises listed above. This is the most we will pay for one or more assessments arising out of a single loss covered under:

**a.** Either Section **I** Additional Coverage **E.7.** Loss Assessment or Section **II** – Additional Coverage **D.** Loss Assessment; or

**b.** Both Section **I** and Section **II.**

**3. Special Limit**

We will not pay more than $1,000 of your assessment per unit that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**4. Section II – Exclusion**

Section **II** – Exclusion **F.1.a.** does not apply to this coverage.

**5. Deductible**

No deductible applies to this Loss Assessment Coverage.

All other provisions of this policy apply.


EXHIBIT A

POLICY NUMBER:23247975 - 01                                   **HOMEOWNERS**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WATER BACK UP AND SUMP OVERFLOW

**1.** For an additional premium, we insure, up to **$5000** for direct physical loss, not caused by the negligence of any "insured," to property covered under Section I caused by:

**a.** Water which backs up through sewers or drains; or

**b.** Water which overflows from a sump pump even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This endorsement does not increase the limits of liability for Coverages A, B, C or D stated in the policy Declarations.

**2. Special Deductible**

The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

We will pay only that part of the loss which exceeds **$250**. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D – Loss of Use.

**3. Section I – Perils Insured Against**

With respect to coverage described in **1.** above only, Paragraph:

**A.2.c.(6)(b)** in Form **HO 00 03** without **LEX 15 31 11 04**;

**A.2.e(2)** in Form **HO 00 05**;

**1.b.(5)(b)** in Form **HO 00 03, HO 00 04,** or **HO 00 06** with **LEX 15 31 11 04**;

**2.c.(6)(b)** in Form **HO 00 06** with **HO 17 32 10 00**;

is deleted and replaced with the following:

Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**4. SECTION I – EXCLUSIONS**

The **Water Damage** exclusion is deleted and replaced by the following:

Water Damage, meaning:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water, or water-borne material, which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is discharged from a sump, sump pump or related equipment

as a direct or indirect result of flood; or

**c.** Water, or water-borne material, below the surface of the ground, including water which:

**(1)** Exerts pressure on; or

**(2)** Seeps or leaks through;

a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

All other terms and conditions of the policy remain the same.

EXHIBIT A

POLICY NUMBER: 23247975 - 01                                                    HOMEOWNERS
                                                                                LEX 04 33 11 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED FUNGUS(I), MOLD(S), SPORE(S), WET OR DRY ROT, BACTERIA, MILDEW OR YEAST COVERAGE

### SCHEDULE*

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| **1.** | Section **I** – Property Coverage Limit Of Liability for the Additional Coverage "Mold Related Items" | $ 5,000 |
| **2.** | Section **II** – Coverage **E** Aggregate Sublimit Of Liability for "Mold Related Items" | $ 5,000 |
| | *Entries may be left blank if shown elsewhere in this policy for this coverage. | |

## DEFINITIONS

The following definitions are added:

1. "Mold Related Items" include the following definitions for "Fungus(i)", "Mold(s)", "Spore(s)", but also includes, Wet or Dry Rot, Bacteria, Mildew or Yeast.

   a. "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, mushrooms, and any mycotoxins, spores, scents or byproducts produced or released by fungi.
   b. "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.
   c. "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

## SECTION I – PROPERTY COVERAGES

The following Additional Coverage is added:

13. **"Mold Related Items"** (or Subparagraph **12.** if this endorsement is attached to **HO 00 06**)

    a. The amount shown in the Schedule above is the most we will pay for:

       (1) The total of all loss payable under Section **I** – Property Coverages caused by "mold related items";

       (2) The cost to remove "mold related items" from property covered under Section **I** – Property Coverages;

       (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "mold related items"; and

       (4) The cost of testing of air or property to confirm the absence, presence or level of "mold related items" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "mold related items".

    b. The coverage described in **13.a.** (or Subparagraph **12.a.** if this endorsement is attached to **HO 00 06**) only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:


EXHIBIT A

**(1)** Number of locations insured under this endorsement; or

**(2)** Number of claims made.

**d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "mold related items", loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "mold related items" causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Endorsement.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

If this endorsement is attached to **HO 00 03** without **LEX 15 31** or **HO 00 03, HO 00 04** and **HO 00 06** with **LEX 15 31**:

Paragraph **A.2.c.(6)(c)** or **1.b.(5)(c)** (if **LEX 15 31** is attached) is deleted and replaced by the following:

**(c)** or **(c)** Smog, rust or other corrosion;

Paragraph **A.2.c.(6)(i)** or **1.b.(5)(i)** (if **LEX 15 31** is attached) is added:

**(i)** or **(i)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 06** with **HO 17 32**:

For Coverage **A**:

Paragraph **2.c.(5)** is deleted and replaced with the following:

**(5)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

**(c)** Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion **A.10.** (or Exclusion **10.** if this endorsement is attached to either a **HO 00 04** or **HO 00 06**) is added.

**10. "Mold Related Items"**

"Mold Related Items" means the presence, growth, proliferation, spread or any activity of "mold related items".

This Exclusion does not apply:

**a.** When "Mold Related Items" results from fire or lightning; or

**b.** To the extent coverage is provided for in the "Mold Related Items" Additional Coverage under Section **I** – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "Mold Related Items" is covered.

## SECTION I – CONDITIONS

Condition **P.** Policy Period (or Condition **O.** if this endorsement is attached to **HO 00 04**) is deleted and replaced by the following:

**P. Policy Period**

This policy applies only to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A.** Limit Of Liability is deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

EXHIBIT A

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "Mold Related Items" will not be more than the Section **II — Coverage E** Aggregate Sublimit Of Liability for "Mold Related Items". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**a.** Number of locations insured under the policy to which this endorsement is attached;

**b.** Number of persons injured;

**c.** Number of persons whose property is damaged;

**d.** Number of "insureds"; or

**e.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "Mold Related Items" described in **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is deleted and replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II — Conditions 1.,** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other terms and conditions of the policy remain the same.

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL
# &
# LIMITED LEAD AND ESCAPED LIQUID FUEL
# LIABILITY COVERAGES

## ADVISORY NOTICE TO POLICYHOLDERS

*THIS NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED WITH.  <u>IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL</u>.*

<u>THE POLICY YOU HAVE JUST APPLIED FOR OR RECEIVED HAS</u>:

- Added coverage for damage to your property caused by the escape of certain petroleum products that may be found in or on your home, your residential unit in an apartment, condominium or cooperative building, your household or personal property, other real property you own that is covered in this policy and land on which your home or unit or covered personal property is located; and

- Reduced liability coverage for injury to another person, or damage to the property of others, that is caused by the escape of certain petroleum products or by lead on or emanating from an insured location such as your house, any other premises where you are living but which you do not own, or vacant land that you own.

## ESCAPED FUEL REMEDIATION

If liquid fuel escapes from a fuel storage system on your property, loss or damage caused by the escaped fuel to your home, personal property, any other one, two, three or four family dwelling building you own and insure for remediation coverage will be covered.  Additionally, your land on which the house, other structures or other dwelling building you own are situated will be covered for loss or damage.  Coverage will apply when the fuel storage tanks, vessels and/or containers on your property have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel.  Coverage will also be provided for:

EXHIBIT A

LEX 05 80 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.     The cost of making temporary repairs to stop the further escape of liquid fuel, or to retard or stop the spread of escaped liquid fuel.

2.     Reasonable expenses to test, monitor or assess the effects of escaped liquid fuel required by law, or when a governmental agency or a court of law requests, orders or demands that you do so.

3.     Loss or damage to your trees, shrubs and plants that are not grown for business;  and

4.     Additional living expenses you incur to maintain your normal standard of living.


<u>However, there will be no coverage</u>:


1.     For a reduction in the market value of your house and any other dwelling building you own, including the land on which they are situated, or your personal property, whether or not such property has been damaged;

2.     For damages resulting from the loss of a pending sale of your house and, if covered under this policy, other dwelling buildings, other structures and your personal property;

3.     To replace any of the escaped fuel;

4.     For any expense you incur to demolish, repair or replace any part of your fuel system; and

5.     For any damages resulting from an escape of liquid fuel from one or more containers, tanks or vessels or related lines or parts that are connected to or a part of a motor vehicle, motorized land conveyance or watercraft.


<u>Our Limit of Liability</u>

We will provide up to $10,000 of coverage.  The limit is the most we will pay for the total of all loss, damage or expense caused by the escape of liquid fuel from your fuel system during the policy period regardless of the number of locations insured under your policy, the number of escapes of liquid fuel you discover or learn of during the policy period or the number of claims made.

<u>Your Deductible</u>



LEX 05 80 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We will apply the AOP (all other perils) deductible shown on the declaration page to any loss.

## LEAD AND ESCAPED FUEL LIABILITY COVERAGE

1.      We have limited your coverage when a claim is made or a suit is brought against you by another person alleging damages because of:

   a.  bodily injury arising out of the absorption, ingestion or inhalation of lead that is in or on your home or your residential unit, any other structures you may own, your personal property, and soil on any insured location;

   b.  property damage arising out of lead contamination, but only if the lead originates at an insured location; or

   c.  bodily injury or property damage arising out of the escape of liquid fuel from your fuel storage system when the fuel storage tanks, vessels and/or containers have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel and the fuel is used to heat or cool your dwelling, heat water, cook food, or power your motor vehicle, recreational vehicle or boat not used in any business.

2.      The limit of liability is provided on an aggregate basis.  This means that the limit for liability coverage is the most we will pay for all damages resulting from the total of all bodily injury or property damage, occurring during the entire policy period, that is caused by the escape of liquid fuel from your fuel system or the exposure to lead.  This aggregate limit is the most we will pay regardless of the number of locations insured under the policy, number of insureds, number of persons injured by the lead or escaped fuel, number of persons whose property is damaged by the lead or escaped fuel or the number of claims made against you.

   We will provide up to $50,000 of coverage.

All other terms, conditions and exclusions of this policy remain the same.

EXHIBIT A

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ENDORSEMENT # 89644 (6/13)

This endorsement, effective 12:01 A.M.,  08/14/2020
Forms a part of Policy No.:  23247975 - 01
Issued to:  Villamar, Sara
By:  LEXINGTON INSURANCE COMPANY

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE

89644 6-13

EXHIBIT A

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.,  **08/14/2020**
Forms a part of Policy No.:  **23247975 - 01**

## SERVICE OF SUIT CONDITION

This endorsement modifies insurance provided under the policy:

The following condition is added to this policy and, if applicable, supersedes any Service of Suit Condition currently provided therein:

> In the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed  that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against us upon this Policy, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

> Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

PRG 2023 (5/14)

EXHIBIT A

**WHAT TO DO IF YOU SUFFER A LOSS TO YOUR HOME AND PROPERTY**

**Below are steps you should follow whenever you are confronted with a loss to your home and/or personal property.**

<u>NON-CATASTROPHIC EVENT</u>

➢ **Promptly report your loss to your insurance agent.**
Your agent has the most updated knowledge of your insurance coverage and can help you throughout the claims process.

➢ **Protect your property from further damage or loss by hiring a qualified professional to assist in making temporary repairs.**

➢ **Keep an accurate record of repair costs.**
Be ready to provide the claim professional with copies of paid invoice, check numbers or cash receipts.

➢ **In cases of theft or vandalism immediately notify your local police.**

➢ **Complete a room by room inventory of both the damage to your dwelling and contents.**
When contents are involved be sure your inventory includes detailed description of the item, ages, places of purchases as well as today's cost to replace. You will be requested by the claims professional to provide all supporting documentation you have regarding these items to include credit card or purchase receipts as well as copies of cancelled checks.

➢ **In the event you are unable to report a claim directly to your agent, you may call our toll free claim reporting hotline at 1-800-931-9546, or by sending an email to LexORGFNOL@aig.com.**

**For US-based clients who are traveling abroad:  1-302-482-6000.**

<u>CATASTROPHIC EVENT</u>

➢ **Promptly report your loss to your insurance agent.**
Often in times of catastrophes utilities in your area are affected and you will not be able to contact you local agent or broker who is being affected by the same conditions.  **In these cases you may call toll free claim reporting hotline *Lex Call One* to report <u>Catastrophic claim</u> at 1-800-931-9546. To report <u>Catastrophic claim</u> by email send email to LexORGFNOL@aig.com.**

➢ **To the best of your ability protect your property from further damage or loss by making temporary repairs.**
In times of widespread damage, such as in the case of hurricanes, it may not be possible for you to retain a contractor to assist with these repairs for several days after the event.  Do what you can until you can contact and retain a professional.

➢ **Keep copies of all invoices and expense incurred.  Make sure they are detailed.**

➢ **Complete a room by room inventory of all damage.**
When contents are involved make sure your inventory includes a detailed description of items, ages of each item, place of purchase and cost to replace.

*For information on safety tips, contact the Institute for Business & Home Safety at www.diastersafety.org.  For up to date tracking of approaching hurricanes access the National Oceanographic & Atmospheric Administration at www.noaa.gov*

Claims Notice to Policyholders

**EXHIBIT A**

Rev 8/2017

| **FACTS** | **WHAT DOES AMERICAN INTERNATIONAL GROUP, INC. (AIG) DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and Medical Information<br>• Income and Credit History<br>• Payment History and Employment Information<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons AIG chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does AIG share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, conduct research including data analytics, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| **Questions?** | **For AIG Insurance Companies: Call 866-244-4786; Fax: 212-458-7081 or E-Mail:** CIPrivacy@aig.com |
|---|---|

**For Pet insurance sold by AIG Insurance Companies: Call 866-937-7387 or E-Mail:**

CIPrivacy@aig.com

**For Morefar Marketing, Inc. (Non-Warranty):**

**For policies/services sold prior to 2015, Call 866-244-4786 or E-Mail:** CIPrivacy@aig.com

**For policies/services sold in 2015 or later, Call 800-982-5701 or E-Mail:** CIPrivacy@aig.com

**For Morefar Marketing, Inc. (Warranty): Call  800-982-5701 or E-Mail:** CIPrivacy@aig.com

**For LiveTravel, Inc., Travel Guard Group, Inc. or AIG Travel Assist, Inc.: Call 866-244-4786 or E-Mail:** CIPrivacy@aig.com

EXHIBIT A

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The insurance company subsidiaries of American International Group, Inc. (AIG) underwriting property-casualty, accident & health, life insurance and related services and certain marketing subsidiaries of AIG listed below. |

## What we do

| | |
|---|---|
| **How does AIG protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings.  We restrict access to employees, representatives, agents, or selected third parties who have been trained to handle nonpublic personal information. |
| **How does AIG collect my personal information?** | We collect your personal information, for example, when you<br>• apply for insurance or pay insurance premiums<br>• file an insurance claim or give us your income information<br>• provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes— information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include the member companies of American International Group, Inc.* |
| **Nonaffiliates** | Companies not related by common ownership or control.  They can be financial and nonfinancial companies.<br>• *AIG does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include companies with which we jointly offer insurance products, such as a bank.* |

## Other important information

This notice is provided by  American Home Assurance Company; AIG Assurance Company; AIG Property Casualty Company; AIG Specialty Insurance Company; Commerce and Industry Insurance Company; Granite State Insurance Company; Illinois National Insurance Co.; Lexington Insurance Company; AIU Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; National Union Fire Insurance Company of Vermont; New Hampshire Insurance Company; The Insurance Company of the State of Pennsylvania; (collectively  the "AIG Insurance Companies"). This notice is also provided by certain marketing subsidiaries of AIG, including Morefar Marketing, Inc., LLC, Travel Guard Group, Inc., AIG Travel Assist, Inc. and LiveTravel, Inc. who market insurance or non-insurance products and services to consumers.

**For Vermont Residents only.** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.  Additional information concerning our privacy policies can be found using the contact information above for Questions.

**For California Residents only.** We will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account.

**For Nevada Residents Only.** We are providing this notice pursuant to Nevada state law.  You may elect to be placed on our internal Do Not Call list by contacting us as listed above.  Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington Street, Suite 3900, Las Vegas, NV 89101; Phone number: 702-486-3132; email: aginfo@ag.nv.gov.  You may contact the applicable customer service department using the contact information above or by writing to us at Privacy Officer, 175 Water Street, 18th Floor, New York, NY 10038.

You have the right to see and, if necessary, correct personal data. This requires a written request, both to see your personal data and to request correction. We do not have to change our records if we do not agree with your correction, but we will place your statement in our file. If you would like a more detailed description of our information practices and your rights, please write to us at: Privacy Officer, 175 Water Street, 18th Floor, New York, NY 10038.



EXHIBIT A

**Carlos de Armas**
AIG Claims Inc.
786.742.2231 Telephone
Carlos.dearmassoto@aig.com



May 10, 2022

Sara Villamar
3485 N Meridian Ave
Miami Beach, FL, 33140

| | |
|---|---|
| Named Insured: | Sara Villamar |
| Loss Location: | 3485 N Meridian Ave Miami Beach, FL, 33140 |
| Policy Number: | 23247975 - 01 |
| Policy Effective Dates: | 8/14/2020 - 8/14/2021 |
| Underwriting Company: | Lexington Insurance Company |
| Reported Date of Occurrence: | 04/11/2021 |
| Claim Number: | 683 677980 |

Dear Mrs. Villamar:

We are writing to you regarding the above captioned claim which was received in our office on November 23, 2021,  for damages reported as having occurred on or about October 19, 2020. This date of loss was corrected to a date of loss of April 11, 2021, by your public adjuster, Gustavo Santos with Santos Public Adjusters via email correspondence dated December 15 2021.

Failure to provide prompt notice of the loss to Lexington may have prejudiced our ability to independently confirm the cause, origin, date of loss and duration of the reported damages.  There were questions as to whether Lexington was obligated to indemnify you under your policy for the loss and your claim was investigated under Reservation of Rights, as previously mailed to your public adjuster, on January 28, 2022.

Please be reminded your Homeowners insurance policy assigned you specific duties following a loss, including the duty to provide prompt notice of a loss to Lexington.

**SECTION I – CONDITIONS**

***
**B. Duties After Loss**
In case of a loss to covered property, we have no
duty to provide coverage under this policy if the
failure to comply with the following duties is prejudicial
to us. These duties must be performed either
by you, an "insured" seeking coverage, or a
representative of either:
**1.** Give prompt notice to us or our agent;

A representative from Engineering Systems, Inc. ("ESi") and AKG Roofing & Specialty Services, Inc. ("AKG") inspected your property on 12/14/2021. During this inspection, there was no indication wind damage contributed to the conditions observed on the roofing system.

ESi concluded the following:

EXHBIT B



*"Based on the above referenced investigation and analysis, the following conclusions are provided to a reasonable degree of engineering certainty.*

*1. The Villamer residence is located at 3485 N. Meridian Avenue, Miami Beach, FL 33140 (Figure 1 and in the attached EagleView roof geometry and statistics report). County records list the residence as having been constructed in 1951 with additions in 1991 and as having been last purchased in 1988. A permit history search was performed through the City of Miami Beach Building Department website that revealed that reroofing permit BS932053 was issued in 1993 for a reroof. This indicates that the current roof is approximately 28 years old, as no subsequent roof or re-roofing permit information existed. See the attached property appraiser and building permit information. Satellite imagery was obtained that indicated that unpermitted front flat roof repairs and/or repainting activities occurred in 2019. The roof and residential structure would have experienced the 2004 and 2005 hurricane season storm exposures that included named storms such as Hurricanes Charley and Wilma respectively, 2017 Hurricane Irma exposure, and 2020 Tropical Storm/Hurricane Eta exposure.*

*2. The roof installation did not exhibit storm related damage conditions that typically appear in the form of missing and/or displaced roof tiles and sometimes, possibly peeled back/damaged roofing underlayment. There were very few chipped and cracked roof tiles on the roof (Figure 6) which are likely related to past foot traffic associated with maintenance activities such as pressure washing tasks performed over the years. Existing damages for the roof include cracked tiles that number approximately (7), chipped tiles that number approximately (2), and displaced tiles that number approximately (3). The total area of cracked, chipped, displaced, and/or broken roof tiles is less than one percent (< 1%) of the total 2.666 square feet sloped tile roof surface area.*

*3. Repairs to chipped and cracked roof tiles are less than the 25% design, repair, and replacement activity threshold mandated by the Florida Building Code. See the attached documentation. Attached manufacturer documentation has also been included at the end of this report that describes how and why chipped tiles are created, and these documents describe how to walk on a tile roof.*

*4. Roofing substrate weathers and deteriorates over time. It becomes brittle and can subsequently split or crack. Natural deterioration of roofing substrate is characterized as normal wear and tear. This occurrence can take place due to sun exposure, heat exposure, and cyclical expansion-contraction created by thermal/temperature changes, throughout the days, months and seasons. Once a roofing substrate becomes worn and aged, it loses its waterproofing ability and then, as rain accumulates on the roof surfaces, the roofing substrate can become saturated and allow water to penetrate into the building envelope. See the attached and unrelated roof tile removal and leak location exposure, at conditions created due to an aged and leaking roof as opposed to roof damage caused by a hurricane exposure event.*

*5. The manufacturer stamp located on the topside of the installed roof tiles indicated "ALTUSA MADE IN VENEZUELA". The roof tile style and profile that was originally installed on the residence is similar to the Spanish S-profile tile by Altusa. Research indicates that Altusa Clay Roof Tiles are no longer in existence and Altusa was acquired by Ceramica Verea in the recent past. The size/profile types currently available from Altusa suppliers and from Verea can be seen at their websites listed in this report. NOA information can be obtained at those website addresses and at the appropriate Miami- Dade County related website. Associated NOA information has been attached to this report for reference purposes. Similar tiles to the installed tiles may be located by contacting iTel roofing locator services (1-800-890-4835). Or tiles may be harvested from smaller roof facets for roof repairs. Minor damage to relatively few roof tiles has been sustained over the years. The total area of cracked, chipped, displaced, and/or broken roof tiles is less than approximately one percent (< 1%) of the total roof surface area.*

*6. The Miami-Dade County notice of acceptance for the Altusa Spanish "S" NOA 14-0605.03 (attached) can be referenced for profile dimensions, installation details, and uplift resistance values to wind-applied forces. Similar Santa Fe Spanish "S clay roof tiles are depicted in in the Notice of Acceptance NOA No. 15-0915.09.*

EXHBIT B

*7. The residential structure, roof, windows, doors, and attachment or fastening techniques of various components are designed such that they will resist wind loadings generated from the exterior environment due to a storm such as Hurricane Eta/Hurricane Irma. Fastening techniques and required resistance capacities are governed by the Florida Building Code and various industry standards. Hurricane Irma wind forces were relatively minor compared to residential design loading requirements. Recent 2020 and Hurricane Eta storm wind forces were much less. Wind speeds on October 19, 2020, the stated date of loss, were much less. From the design wind pressure equation depicted in Figure 13, the wind velocity squared variable (V2) tremendously influences the design and generated wind pressures and associated forces. Highest wind speeds from Hurricane Irma in the south Florida region reached 90 miles-per-hour and will generate a pressure and force value with a magnitude of 8,100, while 140 mile-per-hour design winds generate a value with a magnitude of 19,600. This indicates that the force calculated for a design wind (140 mph) is nearly 2.4 times as much as the force generated by a 90 mile-per-hour wind value (19,600/8,100 = 2.4). The residential structure, roof, windows and doors, lighting, wall surfaces, etc. experienced actual wind loading, associated pressures, and forces far less, or less than 2.4 times the required design loading. When window and door surfaces experience extreme and excessive wind pressures, above and beyond design ratings, the weakest components will fail first. Yet, no widespread failures existed at the residence over the years.*

*8. Interior damages were observed that have been facilitated by roof leaks in the efficiency and on the exterior of the residence near the front entrance. Ceiling staining was observed within the efficiency (Figure 17). Soffit cracking was observed near the front entrance (Figure 18).*

*9. Ceiling staining was observed in the hallway bathroom that has likely been caused by roof leaks (Figure 20). Ceiling paint flaking also existed around the light and on other ceiling locations that has been facilitated by excessive humidity and/or ventilation issues and is unrelated to roof leaks issues.*

*10. Apparent discolorations were observed on the wall tile in the hallway bathroom that were stated by others to be related to water intrusion. However, the discolorations appeared to be the natural coloration of the tile (Figure 21 and the Attachments).*

*11. Interior damages were observed in the master bathroom that are related to excessive humidity and/or ventilation issues and are completely unrelated to any recent hurricane and/or storm exposure event. Paint flaking and fungal growth were observed on the ceiling near the shower stall (Figure 22). Unrelated shower stall and wall tile staining also existed (Figure 23).*

*12. Hallway bathroom wall tile staining existed that was stated by others to be related to water exposure (Figures 20 and 21). Master Bathroom shower stall and wall tile staining also existed (Figure 23). Professional companies such as Coit, Stanley Steamer, and others are capable of performing tile cleaning and restoration activities, as are other companies that provide various tile reconditioning activities. Reconditioning activities sometimes include chemical cleaning, buffing, polishing, and/or other restorative activities for removal of staining, blemishes, and/or various anomalies that sometimes form.*

*13. Unrelated interior damages were observed in the living room and the Guest Bedroom 1 that have been facilitated by A/C condensation sweating issues. Ceiling swelling was observed around the living room and Guest Bedroom 1 A/C vent (Figures 24 and 25).*

*14. Unrelated ceiling wallboard hairline cracking existed in the living room (Figure 26). The observed damages are likely related to termites and are completely unrelated to any recent hurricane and/or storm exposure event.*

*15. An ISO report provided by others suggests that prior claims were initiated at the residence. Prior recent claims include claim #683-677587-001(DOL 7-8-2021 Water Damage to Property). No other information has been provided about this prior claim and the room or location of the interior damages within the*

EXHBIT B

residence was not stated. See the attached prior claims documentation excerpt page, provided to and reviewed by ESi.

16. Construction materials such as the paper-backed wallboard surfaces that have been adversely affected by excessive moisture exposure become food sources for mold and require appropriate restoration. These construction materials are known to develop mold due to the cellulose composition that is a food source for mold upon prolonged moisture exposure. Care should be exercised during the restoration process so as to not spread dust and debris throughout the residence, during moisture-damaged materials removal."

AKG concluded the following:

"AKG inspected the property located 3485 n Meridian Ave Miami Beach, Florida 33140 on 12/14/2021 at 10:00am. AKG was contracted by Carlos de Armas Soto a National General Adjuster for AIG insurance company, to evaluate the roofing system and determine whether it has been damaged because of a wind event that occurred on 10/19/2020 (date of loss reported by the insured). The opposing appraiser was present also the insured Sara Villamer.

Per the Florida Building Code - wind parameters, roof tiles should be installed as a roofing system to withstand winds up to 130 MPH tunnel tested for over a period of one hour. The reported winds associated with the 10/19/2020 storm did not exceed this maximum wind speed. The wind speeds did not reach high speeds that would potentially dimmish a roof found at this property.

Prior to our inspection, AKG conducted a permit record search for the above property to determine any past roof repairs. The permit search history results were inconclusive and unavailable. No roof repairs have been reported.

From the permit search and AKG's visual inspection of the roofing components, the roof is showing signs of prolonged weathering due to its current age (Approx. 18-22). Based upon AKG's experience, roof tiles in the state of Florida typically have a life expectancy of 26-32 years, depending on the elements associated with climatic changes (aka prolonged exposure to weather cycles). From AKG's observations, this roofing system is presently has approximately 6-9 years left of life remaining.

AKG's inspection consisted of exterior photos of the dwelling. We then entered the home to investigate and observe the water intrusion deficiencies or locations as reported by both the homeowner and appraisers. The locations of water intrusion are listed below:

- Kitchen area

- The second location was in the bathroom

- Master Bedroom

- Girls Bedroom

- Efficiency

Once the following water intrusion locations listed above were observed and noted. AKG inspected the roof to pinpoint the origin of the water intrusion. The water stains in the Kitchen area are caused damage from the A/C ventilation, the leak is not roof related. The Master bedroom and bathroom are also not roof related damages, the Master bedroom is an A/C issue also and the bathroom is from humidity which causes natural

EXHBIT B

*moisture and peeling the paint in the bathroom. The girl's bedroom has a leak which originated from the Vent on the roofing system. The leak is proactive maintenance issue, and it is recommended by manufactures and trained professionals is to have the flashing details maintained every 6/7 years. The efficiency has a leak at the flat roof felt which is deteriorated from the UV rays of the sun. There was a detection of staining in the attics sheathing however the area looked old and not active prior to the date of reported loss.*

*In general, the roof system at this property is a Altusa Clay tile from Venezuela. There is also a flat roof at the front of the home and the back of the home. The roof also includes rain gutters. Although the tiles are discontinued, the Florida Building Code Section 706.1-706.5 states that if repairs are under 25% of the total roof area, the roof may be repaired. From our observations, approximately 1% of the roof is damaged, but none of the damage is related to the windstorm. This roof falls under Section 706.5 of the Building Code. We observed minor areas of tiles cracked or chipped. These deficiencies are from normal wear and foot traffic not from wind damage. The flat roof located at the front of the home and back have issues prior to the date of reported loss, a one-day wind or rain event would not diminish this roofing system.*

*Additionally, AKG observed signs of mechanical damage which is a direct result of foot traffic on the roof. The roof also had signs of previous repair to the hip and ridge, hip and ridge tiles were loose lying in their own body weight in same position from date of installation. AKG finds this as evidence that no wind damage occurred during date of reported loss. The roof was not showing any wind or rain peril created event roof deficiencies. The front flat roof we recommend a silicone base to maintain the roof and limit leaks in the future, the back flat roof area needs to be replaced. The ultraviolet rays from the sun have completely deteriorated the roofs barrier to protect itself from weather and sun. The roof is down to the fiberglass which is a detection that the roof life is ending. The Flat roof also recommend replacement with silicone painting, the procedure is highly recommended and comes with a 10-year warranty from the main manufacture.*

*Based upon the compiled data collected and a thorough investigation of the roof system, and location of the reported water damage/stains, AKG can conclude that this roof did not suffer wind damage. Furthermore, the roof has common roofing deficiencies that we see on every basis. AKG finds this roof with 0% damaged from wind or rain and is completely repairable. AKG states also that a 24-hour wind or rain event would never cause damage and wear found at the property inspected. The claimed areas are AC ventilation issues and roof flashing areas, both not from the date of reported loss and lack of proactive maintenance.*

*As discussed above, the above-described water stains observed at the property are the result of roof issues not associated with wind and can be repaired by AKG Roofing. The repairs would include flashing detail repair at flashing areas (2) and bonding hip and ridge tiles along with replacing the cracked tile areas for $4,356. Includes permit fees."*

Additionally, Lexington retained The Teebagy & Medeiros Law Group, PLLC to conduct the Examination Under Oath ("EUO") of your son, Henry Villamar, per request of your public adjuster, Gustavo Santos. Despite requests for same, evidence showing that there are actual wind damages to this property from the reported date of loss have not been provided. It is important to note, once again, that the claim investigation was prejudiced by reporting this claim 7 months later than the reported date of loss.

Related to the weather on the corrected date of loss of April 11, 2021, there were no reported wind speeds higher than 40 mph winds in Miami as per www.wunderground.com data.

EXHBIT B

Based on these conclusions and findings we will not be issuing any payment under this claim related to the roof as reported damages appear to be unrelated to the reported cause and date of loss. Damages to roof surface appear to be related to age, wear and tear.

We refer you to the insured's homeowner's insurance policy form HO 00 03 10 00 SECTION I – PERILS INSURED AGAINST A. Coverage A – Dwelling and Coverage B – Other Structures, pages 8 and 9:

[…]

**2.** We do not insure, however, for loss:

      **a.** Excluded under Section I – Exclusions;

      **c.** Caused by:

            **(6)** Any of the following:

                  **(a)** Wear and tear, marring, deterioration;

                  **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

                  **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

[…]

And also refer to you to form HO 00 03 10 00 SECTION I – EXCLUSIONS, pages 11 and 12

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

[…]

**B.** We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

      **1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

[…]

      **3.** Faulty, inadequate or defective:

            **b.** Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;

EXHBIT B

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

[…]

Nevertheless, we are willing to provide coverage for the ensuing damages that our experts think might have been related to a past windstorm or rain event.

We prepared an estimate for the interior damages for $16,382.03. Recoverable depreciation is $1,023.53 and deductible is $2,500. Net payment on the claim is $12,858.50.

Please refer to form HO 00 03 10 00 SECTION I – CONDITIONS, page 13

SECTION I – CONDITIONS
A. Insurable Interest And Limit Of Liability Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or
2. For more than the applicable limit of liability.
B. Duties After Loss
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
a. The time and cause of loss;
b. The interests of all "insureds" and all others in the property involved and all liens on the property;
c. Other insurance which may cover the loss;
d. Changes in title or occupancy of the property during the term of the policy;
e. Specifications of damaged buildings and detailed repair estimates;
f. The inventory of damaged personal property described in 6. above;
g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

Please also refer to form LEX 00 202 06 18 EXISTING DAMAGE EXCLUSION:

EXHBIT B

The following exclusion is added to Paragraph A. under SECTION I – EXCLUSIONS of the HOMEOWNERS 3 – SPECIAL FORM and HOMEOWNERS 5 – COMPREHENSIVE FORM policies:
10. Existing Damage
Existing Damage means the following:
a. Any damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date;
b. Any claims and/or damages caused by, arising out of, or resulting directly or indirectly, in whole or in part, from workmanship, repairs and/or lack of repairs relating to or arising from damage which occurred prior to policy inception; or
c. Any claims and/or damages unless all structures covered by your previous policy have been fully and completely repaired. Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss occurring during this policy period.

[…]


Regarding the depreciation we refer you to the insured's homeowner's insurance policy form HO 00 03 10 00 SECTION I – CONDITIONS C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:
1. Property of the following types:
a. Personal property;
b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
c. Structures that are not buildings; and
d. Grave markers, including mausoleums;
at actual cash value at the time of loss but not more than the amount required to repair or replace.
2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
(1) The limit of liability under this policy that applies to the building;
(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
(3) The necessary amount actually spent to repair or replace the damaged building. If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.
b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
(1) The actual cash value of that part of the building damaged; or
(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of
the building.
c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;
(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and



EXHBIT B

(3) Underground flues, pipes, wiring and drains.
d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above. However, if the cost to repair or replace the damage is both:
(1) Less than 5% of the amount of insurance in this policy on the building; and
(2) Less than $2,500; we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.
e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

We have attached to this communication the full report prepared by ESi, AKG and the adjuster's estimate.

Please be advised that we remain willing to review any new information that was not previously provided which you believe would be relevant for our analysis. Please provide this information as soon as possible for our prompt review.

Nothing which Lexington Insurance Company may have done prior to this letter, or may do subsequently, in connection with the investigation of the circumstances surrounding this loss or the adjustment of this loss should be construed or considered in any way as a waiver of any of Lexington Insurance Company's rights or defenses.  Lexington Insurance Company further reserves the right to bring to your attention any additional contractual or legal defenses for any other potential claims under the policy which may be warranted by the facts.

Should you have any questions regarding our coverage position, please contact the undersigned by phone at (786) 742-2231 or by email at carlos.dearmassoto@aig.com.

Sincerely,

*Carlos de Armas Soto*

Carlos de Armas Soto
National General Adjuster – Property Claims
AIG Claims, Inc., on behalf of Lexington Insurance Company


CC:

Hull & Company, Inc. - Charlotte
11405 North Community House Rd.
Charlotte, NC 28277


Santos PA
3057 NW 82nd Ave.,
Doral, FL 33122
info@santospa.com

EXHBIT B

Case 1:23-cv-20325-DPG   Document 1-4   Entered on FLSD Docket 01/27/2023   Page 106 of 119

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Sara Villamar,

Plaintiff,

v.

Lexington Insurance Company,

Defendant.

### **PLAINTIFF'S NOTICE OF SERVING FIRST SET OF INTERROGATORIES**

Plaintiff, Sara Villamar, pursuant to the applicable rule of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, Lexington Insurance Company (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: Lexington Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**
_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

Case 1:23-cv-20325-DPG   Document 1-4   Entered on FLSD Docket 01/27/2023   Page 107 of 119

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Sara Villamar,

Plaintiff,

v.

Lexington Insurance Company,

Defendant.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Plaintiff, Sara Villamar, (the "Insured"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, hereby requests that Defendant, Lexington Insurance Company (the "Insurance Company"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Florida Rules of Civil Procedure or by order of the Court.

I          DEFINITIONS AND INSTRUCTIONS

1. The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company " means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2. The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body,

group of natural persons, or other entity.

3.   The "Complaint" means the Complaint filed by the Insured in this action.

4.   The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.   The term "all documents" means every document or group of documents *as* above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.   The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.   The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.  As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.  The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The terms "each" and "every" means "each and every," the term "including" means "including without limitation.

10. The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11. The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12. The term "to date" shall mean the date on which you respond to this request,

13. When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14. When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15. In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16. The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17. If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

> (a)     furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;
>
> (b)     state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and
>
> (c)     describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19. Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you receive this request.

20. The term "Insured" shall refer to the Petitioner(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.   LOST/DESTROYED DOCUMENTS

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.   DOCUMENTS REQUESTED

1.      A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.      Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.      Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans

to visit the Property on behalf of the Insurance Company.

4.      Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

5.      Any and all correspondence or written communications from the Insured, or their representatives to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.      Any and all photographs taken by the Insurance Company of the Property.

7.      All documents containing information regarding any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insured. If you claim privilege over any of these documents, please provide redacted documents showing only any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss

8.      Any and all bills or estimates for repairs to the Property submitted to the Insurance Company.

9.      Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

10.     All reports which in any manner pertain to the Insured's loss, including reports by any expert retained by the insurance company.

11.     All Proof of Loss forms pertaining to the subject loss that were sent or received by

you or your representatives to or from the Insured or the Insured's representative.

12.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

13.     All applications for insurance submitted by or on behalf of the Insured to you or your representatives in connection with obtaining or renewing the subject Policy.

14.     All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

15.     The complete underwriting file for the Insured.

16.     A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

17.     All affidavits or sworn statements in your possession pertaining to the subject loss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: Lexington Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

Case 1:23-cv-20325-DPG Document 1-4 Entered on FLSD Docket 01/27/2023 Page 115 of 119

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.: 2022-024040-CA-01

Sara Villamar,

Plaintiff,

v.

Lexington Insurance Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

**Lexington Insurance Company**
**c/o The Florida Chief Financial Officer as RA**
**200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiff's Attorney, to wit:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service, and to file the original of the defenses with the clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON

As Clerk of Said Court

Court Seal

By:_____
As Deputy Clerk

## IMPORTANT

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

Plaintiff's attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

DATED ON

As Clerk of said Court

By:_____
As Deputy Clerk

(Court Seal)

Case 1:23-cv-20325-DPG Document 1-4 Entered on FLSD Docket 01/27/2023 Page 117 of 119

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.: 2022-024040-CA-01

Sara Villamar,

Plaintiff,

v.

Lexington Insurance Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

**Lexington Insurance Company**
**c/o The Florida Chief Financial Officer as RA**
**200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiff's Attorney, to wit:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service, and to file the original of the defenses with the clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON

12/27/2022

Harvey Ruvin,
Clerk of Courts

As Clerk of Said Court

217043

By: _____

As Deputy Clerk


Court Seal

## IMPORTANT

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

Plaintiff's attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

DATED ON

As Clerk of said Court


By:_____
As Deputy Clerk

(Court Seal)

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

SARA VILLAMAR

PLAINTIFF(S)

VS.

LEXINGTON INSURANCE COMPANY

DEFENDANT(S)
_____ /

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **2022-024040-CA-01** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | **22-000494547** |

## <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, December 28, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, December 29, 2022 to the designated agent for the named entity as shown below.

LEXINGTON INSURANCE COMPANY
JOANNE P KEATING
99 HIGH ST
BOSTON, MA 02110

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

CARLOS SANTI
PROPERTY & CASUALTY LAW GROUP
2307 DOUGLAS ROAD
SUITE 302
MIAMI, FL 33145

AJ1